## POHLMEYER *v.* SECOND NAT. BANK OF RICHMOND.

[No. 17,588. Filed October 26, 1948. Rehearing denied December 6, 1948. Transfer denied January 3, 1949.]

*A Joseph Maloof, Daily, Daily & Daily* and *Clinton H. Givan,* all of Indianapolis, and *David E. Hosemeier,* of Richmond, attorneys for appellant.

*Gardner, Jessup, Harrington & Haworth,* all of Richmond, and *Kane, Blain & Hollowell,* all of Indianapolis, attorneys for appellee.

CRUMPACKER, J.—This litigation has its origin in the alleged maladministration of the estate of Henry J. Pohlmeyer, deceased, by the Second National Bank of Richmond, Indiana, executor of said decedent's last will and testament. The issues were upon current and final reports by the executor and exceptions thereto by appellant. The court found the facts specially, stated conclusions of law favorable to the executor and entered judgment overruling each exception taken by the appellant, allowing executor's and attorney's fees, and in all things approving said current and final reports. The appellant's motion for a new trial was overruled and this appeal followed in due course.

The facts, as found by the court, may be summarized as follows: Henry J. Pohlmeyer, a resident of the city of Richmond, Indiana, died testate on the 19th day of August, 1930, leaving Johanna Elizabeth Pohlmeyer, a second childless wife, and the appellant Marcellus R. Pohlmeyer, a son by a former marriage, as his sole and only heirs at law. Prior to their marriage the decedent and the said Johanna Elizabeth Pohlmeyer, nee O'Connor, entered into a written agreement whereby the latter agreed to "accept from the estate of Henry J. Pohlmeyer, after his death and within six months

thereafter, . . ., the sum of Twenty-five Thousand Dollars ($25,000) in place and instead of all rights which, as widow, Johanna Elizabeth O'Connor might otherwise have, as widow's interest in the real estate or as a distributive share of any of the personal property of Henry J. Pohlmeyer under any statutes now or hereafter in force and effect."

The decedent's will was probated in the Wayne Circuit Court on August 15, 1930, and provided first for the payment of just debts; second, for the performance of the obligations of the ante-nuptial agreement above mentioned; and third, the distribution of the residue of the estate to the testator's son Marcellus R. Pohlmeyer, the appellant herein. The appellee, Second National Bank of Richmond, was nominated as executor of the will and, under appointment of the Wayne Circuit Court, qualified as such on August 25, 1930, and forthwith entered upon the discharge of its duties. On October 17, 1930, the appellee filed an inventory and appraisement of the estate's assets in the sum of $189,435.82. The only real estate disclosed by this inventory, as belonging to the testator at the time of his death, was an equity in a town lot appraised at $500 which was subsequently conveyed to the Pohlmeyer Property Corporation without consideration but with the knowledge and consent of the appellant. Later it was discovered that the testator died seized of an interest in land, the identity of which is unimportant, of the approximate value of $1600. The principal asset of the estate was a block of 4998 shares of the capital stock of Pohlmeyer Property Corporation which was appraised in the sum of $128,229.36. This corporation is a real estate holding company whose principal assets, at that time, were business and resident properties in the city of Richmond and the testator's interest therein

represented its entire issue of capital stock except for one share held by the appellant and one share held by Wilford Jessup for organization purposes. At the time of the testator's death the real estate holdings of the Pohlmeyer Property Corporation were encumbered by two mortgages, one to the Second National Bank of Richmond in the sum of $42,000 and the other to the Dickinson Trust Company of Richmond in the sum of $34,000. In addition to such secured indebtedness the corporation owed $2,741.50 evidenced by its promissory note held by the Fletcher American National Bank of Indianapolis.

The remaining assets of the estate, as inventoried and appraised by the appellee, consisted of cash, life insurance, an interest in the partnership of Pohlmeyer, Welfer and Smith, Undertakers, stocks in local banks and real estate corporations, accounts receivable, an automobile and miscellaneous personal and household effects.

Upon the filing of this inventory it appeared to the widow, Johanna Pohlmeyer, that her statutory interest in the estate was greatly in excess of what she would receive under the terms of the ante-nuptial contract and she employed an attorney to assert the same. After numerous conferences between said widow and her attorney, the appellee and the appellant, said Johanna Pohlmeyer agreed to accept cash in the sum of $25,329.50, the automobile and all household effects in full settlement of any and all claims she might have as such widow. This settlement was reached with the knowledge and consent of the appellant and the approval of the court and was fully performed by the appellee in due course of administration, without objection by the appellant until the executor's final report was filed.

At this time the entire country was in the midst of a general economic depression. The market value of real estate had begun to decline rapidly and numerous common and preferred stocks, bonds and certificates issued and sold on security of real estate were in default. Many banks throughout the country had closed, bank stock was not in demand and realty and real estate securities were difficult to sell without loss. For this reason it was the desire of the appellant, as the sole residuary legatee of his father's estate, that there be no undue haste in the liquidation of assets to pay debts. He expressed the hope that all the stock of the Pohlmeyer Property Corporation would come to him, as such legatee, and suggested to the appellee that if he were permitted to manage the corporation as a going concern its profits could be made to go a long way in discharging the estate's obligations and it would be unnecessary to sacrifice assets for that purpose. This arrangement was tried for several years without success and it became necessary to relieve the appellant of his responsibilities in that connection and to liquidate many of the estate's assets which all parties in interest had hoped might be saved.

In addition to its obligation to the widow, Johanna Pohlmeyer, under the agreement settling the controversy over the ante-nuptial contract, it appeared that there were many substantial and just claims outstanding, including state and federal inheritance taxes, current property taxes, expenses in connection with the last sickness and burial of the testator, current household bills, three notes to the Second National Bank of Richmond aggregating $29,500, one note to the Fletcher American Bank of Indianapolis in the sum of $1,588.16, judgments aggregating $29,382.70 and many miscellaneous bills in comparatively small amounts, to all of

which must be added the reasonable costs of administration.

In making assets to pay these numerous obligations the appellee sold the testator's interest in the partnership of Pohlmeyer, Welfer and Smith, Undertakers, for $3,269.84 less than its appraised value. Second National Bank stock appraised at $12,600 was disposed of for $11,200, a loss of $1400. These sales were fully discussed with the appellant, his attorney and the judge of the Wayne Circuit Court, in which the estate was pending, and fully approved by them. On March 31, 1937, the appellee filed its first current accounting in which each of these transactions were reported in detail and the court thereupon entered its order finding such sales to have been made for not less than the true market value of the property involved and in all respects approving the same. The appellant, though fully advised in the premises, made no objection at the time to either transaction.

It had now become obvious to all concerned that the estate could not be fully administered without the disposal of the testator's interest in the Pohlmeyer Property Corporation. There was no market for the stock in this enterprise, all but two shares of which the appellee held as executor of the estate, and after a conference between the judge of the Wayne Circuit Court, the appellee and its attorney, it was agreed that it would be to the best interest of the estate for the Pohlmeyer Property Corporation to buy its own stock from the appellee. Money for this purpose was to be raised by the corporation, as the occasion demanded, by the sale of its real estate holdings. To carry this plan into effect the appellee, from time to time, petitioned the court for authority to vote the stock held by it in favor of the sale of certain specifically described property

for not less than a designated price. These various petitions were approved by the court and appropriate orders made. As such sales were made the appellee obtained orders from the court to sell various amounts of Pohlmeyer Property Corporation stock at private sale at up-set prices and, there being no other purchasers therefor, the same was sold to the corporation and paid for with the money received from the sale of its real estate. This process was continued until all the stock held by the appellee had been sold to the corporation and as each transaction occurred it was reported to the court which found that the appellee had received the full cash value of the stock so sold and more than it could have procured from any other purchaser. Appropriate orders were entered upon these findings and each sale duly approved. The necessity of disposing of the corporation's real estate was discussed with the appellant as early as 1932 or 1933 and, in the hope of salvaging some interest in the corporation, he did not want all of its real estate offered at once on a declining market and the piecemeal plan finally adopted was in the nature of a concession to him as well as in the good faith belief that it was for the best interests of the estate.

This method of liquidation and disposal of its holdings in the Pohlmeyer Property Corporation brought to the appellee $104,052.82 less than the appraised value of the stock sold. A considerable portion of this loss was reported to the court on the 21st day of January, 1939, when the appellee filed its second current accounting, to which the appellant offered no objection. This report was approved by the court in all things and the appellee continued in the discharge of its duties as executor until the 5th day of December, 1940, when it filed its final report showing the balance

of the loss through sale of the corporation stock and the further fact that the affairs of the estate had been fully and completely administered. Then for the first time the appellant registered formal protest to the doings of the executor and filed exceptions to all three of said reports in which he questions the validity of 44 separate transactions shown therein.

When exceptions are filed to an executor's or administrator's final report it has long been the established practice in this state to regard the report as constituting the complaint and the exceptions thereto as the answer, thereby joining the issues upon which the cause is tried. § 6-1408, Burns' 1933; *Croxton, Administratrix* v. *Croxton* (1943), 112 Ind. App. 645, 46 N. E. 2d 249; *Spray* v. *Bertram* (1905), 165 Ind. 13, 74 N. E. 502; *Meier* v. *Union Trust Co., Exr.* (1931), 93 Ind. App. 457, 176 N. E. 42; *Shuey* v. *Lambert* (1913), 53 Ind. App. 567, 102 N. E. 150.

It is also a general rule that *ex parte* orders on petitions and current reports made without notice to the parties in interest are only interlocutory and may be reviewed and set aside on exceptions to the final report. *Rost* v. *International Electric Co.* (1925), 201 Ind. 568, 146 N. E. 821; *Pfeiffer* v. *Crane, Guardian* (1883), 89 Ind. 485; *Goodwin* v. *Goodwin, Exr.* (1874), 48 Ind. 584. The rule is otherwise however when proceedings on current reports are not *ex parte* and occur with notice to the parties in interest and opportunity on their part to resist. As an expression of the law applicable under such circumstances we quote a part of § 360, Henry's *Probate Law & Practice*, (5th ed.) at p. 464: "Where the proper notice has been given for a hearing upon an account in partial settlement, and the proper parties are before the court having exclusive jurisdiction of

such matter, and either do, or have the opportunity to, contest the correctness and validity of such account, the judgment and order of the court approving and passing the account is as conclusive as if rendered on a final settlement, and is a bar, as to matters determined by such judgment, to all inquiry at the final settlement."

The undisputed evidence discloses, and the court found, that the appellee's first current report was submitted to the appellant and his counsel before it was filed. It was fully discussed by the appellant and the appellee and at the appellant's suggestion certain amendments were made. The report as amended was entirely satisfactory to all parties concerned and was thereupon filed and approved by the court without objection or protest of any kind by the appellant. Under such circumstances we are constrained to hold that "the judgment and order of the court approving and passing the account is as conclusive as if rendered on a final settlement, and is a bar, as to the matters determined by such judgment, to all inquiry at the final settlement." Henry's *Probate Law & Practice, supra.*

An examination of the appellant's exceptions discloses that the first 22 transactions to which he specifically objects concern matters fully covered by the appellee's first current report of March 31, 1937, and we therefore pass them as being *res judicata* and no longer subject to inquiry. We find nothing in the court's special findings of fact, however, that would justify us in considering the proceedings on the second current report as anything but *ex parte*. Therefore the court's approval thereof is an interlocutory order and subject to review on exceptions filed at final settlement. *Rost* v. *International Electric*

*Co., supra.* It is true that many of the transactions set out in said report are the result of a course of conduct pursued by the appellee over a period of years with the full knowledge of the appellant, but we feel that such fact alone is not sufficient to deprive the proceedings of their *ex parte* character and render the court's action thereon a final judgment. Rather, in our opinion, the situation presents the question of an estoppel by conduct which would arise when the court heard the final report and considered the propriety of affirming its interlocutory order.

Of the specific exceptions to the second current and final reports, Nos. 26, 27, 28, 29, 31, 32, 34, 35, 36, 39, 41, 42, 43, and 44 raise questions that are purely factual. In the main they charge that the estate was not indebted to the various claimants therein mentioned and their claims were therefore improperly allowed and paid. The court found against the appellant in each of these contentions and none of such findings has been specifically challenged. Some of the above exceptions also include a charge that the payment of the claims involved amount to a preference of creditors. The undisputed evidence discloses that, with the exception of a few small interest charges which were voluntarily compromised, every creditor of the estate was paid in full. No creditor is complaining of the manner in which these claims were paid and if they were paid contrary to the order of their priority the matter is of no consequence.

Exceptions Nos. 24, 25, 33, and 38 complain of the sale, at various times, of stock in the Pohlmeyer Property Corporation at substantial losses as determined by the appraised value thereof. These exceptions charge that such sales were fictitious, made in the purpose of concealing their real objective

and in violation of the laws of Indiana governing the sale of corporate stock held by an executor in his trust capacity. We have heretofore set out the facts, as found by the court, describing the manner and purpose of these sales. It was the procedure agreed upon by the court, the appellant and the appellee and followed by the latter over a period of years with the knowledge of the appellant and without objection or protest on his part. Nowhere in his brief does the appellant indicate to this court wherein the findings of fact in this regard are not supported by the evidence. On the contrary in his "Propositions, Points and Authorities," the trial court's special findings are not even mentioned; and under such circumstances, this court will not search the record to discover whether or not a material finding is justified. *Bakelandt* v. *DeBaets* (1947), 224 Ind. 648, 71 N. E. 2d 473; *Ball* v. *McPheeters* (1937), 211 Ind. 157, 5 N. E. 2d 885; *Phend* v. *Milk Control Board of Indiana* (1938), 213 Ind. 359, 12 N. E. 2d 114.

In *Meier v. Union Trust Co., Exr., supra*, this court said:

"Suffice it to say, the trial court found that these adult beneficiaries participated in each and every action taken by the executor and trustee in reference to the 'Hercules Stock,' prior and subsequent to the surrender of the common capital stock of the Hercules Electric Company, and the acceptance of the preferred capital stock in the Hercules Manufacturing Company.

"It is the law that, where beneficiaries are of full age, under no legal disability, cognizant of their rights under the trust agreement, and advised as to the character of securities the trustee contemplates investing the trust money in, or the exchange of one security for another, no misrepresentation or fraud on the part of the trustee being present, separately and severally concur, with the trustee in such investment or change of investment, they will be estopped to thereafter question

the propriety of such an investment." See authorities cited.

We are of the opinion that this rule is applicable to the present situation and disposes of the appellant's contentions in connection with the exceptions under consideration. It is true that the stock in question was sold for much less than the value placed on it by the executor's original inventory and appraisement. Such appraisement however is merely *prima facie* evidence of the value of the property appraised and is not conclusive either upon the appellee or any other person interested in the estate. Henry's *Probate Law*, p. 212, § 195 (5th ed.) and cases cited; 21 Am. Jur., Executors and Administrators, § 179 and cases cited. It is likewise true that such stock was sold at private sale without re-appraisement. If this be an irregularity the estate was in no way injured thereby as in each instance the court found that the appellee received the full cash market value of the stock sold and more than it could have received from any purchaser other than the issuing corporation. *The State ex rel. McClamrock* v. *Gregory* (1889), 119 Ind. 503, 22 N. E. 1.

In his exceptions Nos. 23 and 37 the appellant complains because the appellee, in behalf of the estate, rented a safety deposit box from itself and paid itself the sum of $5.60 therefor. Nowhere is it suggested that the estate did not need a safety deposit box or that one could have been rented cheaper elsewhere. Recognizing the principle that transactions between an executor and himself, as an individual, are open to suspicion and should be scrutinized carefully, the appellant has failed to indicate in what manner the transaction was unconscionable or detrimental to the estate.

The appellant's remaining exceptions Nos. 30 and 40 question the propriety of allowing fees to the appellee and its attorney in view of their alleged maladministration of the estate. No claim is made that such fees are excessive or unreasonable in any event and, in view of the conclusions we have reached, we are of the opinion that they are properly allowed.

Three general charges of misconduct and illegal action on the part of the appellee remain for our consideration. First, it is alleged that "said executor, in violation of its plain duty failed and refused to file a current report in said estate until the 31st of March, 1937, and then only after being cited by the Wayne Circuit Court to make such report." Second, the exceptions charged that "said executor intentionally failed to sell the personal property in said estate immediately at public auction after filing the inventory" as provided by statute. The third complaint is to the effect that "said executor failed to inventory and cause to be appraised the various items of personal property belonging to the said decedent at the time of his death."

In respect to the first of these general charges we know of nothing in the pertinent statute, or in any decision construing the same, that constitutes an executor's failure to file a report within the time provided, as grounds for the rejection of the report when actually filed. It is obvious that a report, if correct, should be approved even though tardily filed. The only penalty, provided by statute, for the failure of an executor to file a report on time is removal, in the discretion of the court, upon application of any creditor or beneficiary of the estate. § 6-1401, Burns' 1933 Pocket Supplement.

It is true that there was delay far beyond statutory

contemplation in the disposal of some of the assets of the estate. The reason for this is fully stated in the court's special findings of fact and was largely due to the appellant's insistence that there be no undue sacrifice of assets on a stagnant and declining market. These assets were finally disposed of upon the instigation of creditors and against the desire of the appellant, who hoped and even suggested that a delay would enable him to salvage much that would be lost by prompt liquidation. He is in no position to complain of the procedure now.

Concerning assets of the estate which the appellee originally failed to inventory, the undisputed evidence discloses that the testator's interest in a certain piece of real estate in the city of Richmond was recognized and accounted for in its first current report. In respect to personal property the court made the following finding: "That said inventory and appraisement listed and described all assets of said decedent except certain bonds of the Guaranty Discount Company, an Indiana Corporation, which were of no value, and were reported to the court in the first report in partial settlement filed by the executor with the court on the 31st day of March, 1937." This finding is not specifically challenged by the appellant and, as we have heretofore said, we will not search the record to determine its justification.

In conclusion we deem it advisable to comment upon the appellant's "Propositions I and IV," as stated in his brief, although in our opinion they are clearly outside the issues as joined by the reports in controversy and the exceptions thereto. These propositions count on the alleged fact that at all times while the assets of the Pohlmeyer Property Corporation were being liquidated to enable the corporation to

buy its own stock from the appellee, he was a creditor of the corporation to the extent of approximately $16,000. This process, he asserts, reduced the corporation to a mere shell and rendered his claim worthless. As the appellee held all the stock in the corporation, its assets could not have been liquidated to his detriment except through the action of the appellee in voting to do so. As a creditor of the Pohlmeyer Property Corporation he may or may not have been in a position to insist that the money it received from the sale of its assets be used to pay its creditors rather than for the redemption of its outstanding stock. He took no such action. If the conduct of the appellee was wrongful in this respect and his interests, as a creditor of the corporation, were thereby injured he may or may not have had a claim against the estate. At any rate, he filed none. Now, as a creditor of the corporation, he attempts to assert his rights by way of exceptions to the appellee's final report. Under the law of this state only a person, "interested in the distribution of the assets" of an estate may except to an executor's or administrator's final report. § 6-1408, Burns' 1933. As a creditor of the Pohlmeyer Property Corporation the appellant is not interested in the distribution of the assets of the Henry J. Pohlmeyer estate. Even a creditor of said estate could not have excepted to the appellee's final report if he had failed to file his claim within 30 days before such report was filed. *Evers* v. *Thompson, Administratrix* (1944), 114 Ind. App. 495, 51 N. E. 2d 889. Even though appellant's contentions in this regard were within the issues we could ascribe to them no merit.

Judgment affirmed.

Bowen, J. and Hamilton, J. not participating.

NOTE: Reported in 81 N. E. 2d 709.