GIBSON ET AL. *v.* GIBSON ET AL.

[No. 18,209. Filed May 26, 1952. Rehearing denied June 27, 1952. Transfer denied October 6, 1952.]

*Claude D. Carson,* of Plymouth, for appellants.

*George F. Stevens* and *D. L. McKesson,* of Plymouth, for appellees.

CRUMPACKER, J.—This suit was instituted by Russell P. Gibson, the beneficiary of a trust created by the will of his father, the late William Gibson of Plymouth, Indiana. It was filed as an independent action, under the Declaratory Judgments Act of Indiana, on

the civil side of the Marshall Circuit Court and charges a devastavit of the William Gibson estate through the mal-administration thereof by Lillian Gibson, the executrix, and the intermeddling of Coral Nellans and Faye Travis, mother and sisters respectively of the said Russell P. Gibson. Its purpose is to fix the liability of each of the appellees, except the State Exchange Bank of Culver, Indiana, for alleged conversion of the estate's assets for their own use and judgment against each in the amount so fixed and against the bondsmen of the executrix in the amount found due the estate from her. Shortly before this suit was commenced Lillian Gibson, the executrix, resigned her trust and the State Exchange Bank of Culver was appointed by the probate side of the Marshall Circuit Court as Administrator *de bonis non cum testamento annexo* of said estate and was made a party defendant to answer to its interests as such. During the trial of the cause Lillian Gibson died intestate and no administrator of her state was appointed to represent her in the litigation. However the plaintiff Gibson and the defendants Coral Nellans and Faye Travis, as sureties on her bond as executrix, stipulated that they would be bound by "the adjudication of the court as to her interest in the estate in like manner as though an administrator had been appointed" and that her representation should be regarded as complete through the presence of all her heirs in court as parties litigant.

From the great volume of evidence in the record we have culled facts concerning which there seems to be no dispute and which may be summarized as follows: William Gibson, late of Plymouth, Indiana, died testate September 14, 1943. He left surviving, as his sole and only heirs at law, his widow Lillian Gibson and three children, Coral Nellans, Russell P. Gibson and Faye

Travis, all adults. At the time of his death, his wife Lillian, his son Russell, his daughter Faye and his grandson Donald Travis, then 14 years of age and son of Faye, lived in the testator's residence in Plymouth as a common family. His son Russell was then working and paying board in the sum of $5.00 per week. His daughter Faye was also then employed and likewise paying board in the sum of $10.00 per week for herself and son Donald who was a pupil in the Plymouth high school. His daughter Coral was living in her own home nearby when her father died but had been in the habit of stopping at the family home on frequent occasions and had many of her meals there.

By his will William Gibson nominated his widow Lillian as executrix and gave her $5,000 in cash and the family residence property and contents valued at $9,000. Said will also bequeathed to the trustees of the Presbyterian Church of Plymouth the sum of $300 and then directed the executrix to convert the residue of the estate, except certain United States government bonds, into cash out of which she was to pay the testator's debts and taxes and then turn over the balance to the State Exchange Bank of Culver, Trustee, for the benefit of his three children above named and his grandson Donald Travis in equal shares. The terms of the trust do not concern the questions involved in this litigation and require no exposition further than to say that as events have transpired since the testator's death said trust now has but a short time to run according to the provisions of the will.

At the time of William Gibson's death his estate consisted of both real and personal property including money in banks, United States government bonds, a postal savings account, a Ford automobile, farm produce, the family residence and contents, three rental

properties in Plymouth and a small farm north of said city, all of the appraised value of $51,498.18. The will was probated in the Marshall Circuit Court and Lillian Gibson, the widow, qualified as executrix thereof with her three children Coral Nellans, Russell P. Gibson and Faye Travis as sureties on her bond. The executrix filed an inventory and appraisement of the estate's assets, paid the bequest to the Presbyterian Church, current property and inheritance taxes, the few small debts her husband owed at the time of his death, his funeral expenses, costs of his last sickness and purchased a cemetery lot and a monument to mark his grave. From this point on she paid little or no attention to the provisions of her husband's will but managed the estate as though it were her own. The family continued as it had been living except that Russell and Faye ceased paying board in August, 1946, and in the spring of 1948, respectively, after which they were supported more or less by estate funds which were managed by Lillian, the mother and executrix, and which seem to have developed into a sort of family depository out of which the mother lived and out of which she supplied money to her children and grandchild as their needs dictated from time to time. She maintained the home intact as it had been maintained prior to the death of her husband. She paid for extra house work, groceries, utility bills, taxes on all the property including her own, newspaper bills, insurance premiums, telephone bills, water bills, flowers for funerals of deceased friends, family doctor bills, farm expenses, contributions to local charities and spending money to her son Russell and grandson Donald, all out of estate funds. She collected rentals due the estate some of which she deposited to the estate's credit in a bank account and kept the remainder in her personal

pocketbook. Some of the outlay above mentioned was paid in cash out of the pocketbook and some by check against the bank account. In August, 1947, she procured an order of court to sell the farm for $9,200 which she did and deposited the money to the credit of the estate. Out of this fund she distributed $2,000 to each of the four trust beneficiaries in disregard of the provisions of the will but which each of them accepted without protest and with full knowledge of the terms of said will. In the spring of 1947 Lillian Gibson's health began to fail and she became more or less incapacitated to carry on and her eldest daughter Coral Nellans helped her in many ways in handling the affairs of the estate such as writing checks and depositing money in the bank. As Lillian's health grew worse her illness caused great additional expense. Extra help was hired, a nurse employed and the services of a doctor were frequently required. All of this was paid out of the funds of the estate without objection on the part of any members of the family.

During all this time Lillian Gibson filed no report of her doings as executrix and had not done so up to the time of her death on January 4, 1950. The evidence, concerning the appellant, Russell P. Gibson in particular, indicates that he lived in the family home continuously after his father's death until the property was sold by the administrator d.b.n.c.t.a. He lost his job in August, 1946, after which he had no employment except occasional and infrequent work in a local cigar store and consequently paid no board or room rent. His mother, out of estate funds, furnished all his meals and employed help to care for his room, do his laundry and other services for his personal comfort and convenience. From the same source she paid his doctor bills and nurse hire and medication expenses. He was

a heavy drinker of intoxicating liquors and on a number of occasions his mother paid fines levied against him for public intoxication. The estate, through his mother, gave him spending money and he accompanied his family on vacation trips for which the estate paid all the bills. In short he accepted, without protest, the benefits and advantages of living as a member of a common family to the expenses of which he made no contribution after August, 1946, and before then only to the meager extent of $5.00 per week.

On these facts the court concluded, and so stated in its decree, that all the legatees and devisees under the will of William Gibson, deceased, including the appellant, "knew full well and had complete knowledge that the funds of said estate were being used as they were and made no objections thereto nor found any fault therewith until the fall of 1949." The decree then fixes the amount of money each of the four trust beneficiaries had received from the executrix up to the date of her resignation and directs that such sums shall be treated as advancements and charged against their interests in the estate. The appellant complains because nothing was found due from the estate of Lillian Gibson, widow and executrix, and no judgment is rendered against her bondsmen. The burden was on the appellant to prove a devastavit on the part of the executrix and the failure of the court to so find compels the inference that the court concluded she used no money for her own benefit in excess of the $5,000 in cash and the value of the residence property which was given to her by the will. We cannot say, as a matter of law, that such conclusion is not justified under the evidence. The decree casts the residence property, given to the widow by the will, into the remaining assets of the William Gibson estate and directs that all such assets

be sold for cash by the administrator d.b.n.c.t.a. Out of this fund said administrator is directed to pay the expenses of the last sickness and burial of Lillian Gibson together with some other current bills incurred by her in the maintenance of the family home and the balance distributed to the four beneficiaries of the testamentary trust as the interest of each may appear considering the advancements made to each. The decree dispenses with the setting up of the testamentary trust on the theory that the period, as fixed by the will, is about to terminate and its purpose will have been fully served by the execution of the decree.

The appellant challenges the propriety of this decree in many respects some of which, in view of the conclusions we have reached, we deem it unnecessary to discuss. It is apparent that Lillian, as executrix of her husband's will, failed in almost every respect to administer the estate as directed by said will and as required by the probate code of our state. It is the opinion of this court, however, that the appellant, by his conduct, has estopped himself from complaining in respect thereto. He was familiar with the terms of his father's will and knew that proceeds from the sale of the assets of the estate should have been turned over to the State Exchange Bank of Culver, Trustee, yet upon the sale of the farm he accepted a distributive share of the proceeds without protest. As to other benefits he received from the estate he says he thought they were furnished to him by his mother out of the $5,000 cash bequeathed to her by the will. In view of his constant presence in the home, his daily contact with his mother and the household routine and his observation of the manner in which rentals were handled and bills paid, the court evidently rejected his profession of ignorance of the fact that he was partici-

pating in and enjoying the fruits of his mother's irregular management of the estate's affairs and concluded that he did so with full knowledge thereof. Here again we cannot say, as a matter of law, that such conclusion is not justified by the evidence. Where a beneficiary under the terms of a will, being of full age and suffering no disability, with knowledge of his rights, acquiesces in a course of conduct by the executrix which he knows is not authorized by the will and accepts the benefit thereof, he is estopped thereafter to question the propriety of such conduct. *Life* v. *Stricler* (1928), 87 Ind. App. 281, 156 N. E. 575; *Pohlmeyer* v. *Second Nat. Bank of Richmond* (1949), 118 Ind. App. 651, 81 N. E. 2d 709.

Before the trial the appellant propounded three interrogatories for answer by the appellee Coral Nellans. Her answers were unsatisfactory to him and he moved the court to strike her pleadings from the files and that she be defaulted. This motion was overruled and such ruling is assigned as error. We see no merit in the assignment. In the first place said appellee did not refuse to answer the interrogatories submitted to her but on the contrary she answered each of them under oath. Each answer states in general that the appellee is unable to furnish the information required without an examination of her mother's records as executrix which she would be unable to do until she regained her eyesight. In the second place the appellant made no motion that said appellee be required to answer said interrogatories more specifically nor did he in any manner challenge the truth of the answers given. Therefore we must assume that the appellee could not answer specifically because of a lack of information which she could not then acquire due to physical disability. Such circumstances did not war-

rant the drastic relief sought by the appellant and the court committed no error in refusing it.. *Wheelock and Another* v. *Barney and Another* (1867); 27 Ind. 462; *Baals* v. *Stewart* (1887), 109 Ind. 371, 9 N. E. 403.

It is further charged that the court's decree goes far beyond its jurisdiction and determines matters exclusively within the province of the probate court of Marshall County. As stated in the beginning the appellant chose to predicate his rights on the Declaratory Judgments Act which gives courts of record, within their respective jurisdictions, power "to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." Burns' 1946 Replacement, §§3-1101 and 3-1104. An examination of the appellant's complaint indicates that the Marshall Circuit Court adjudicated the issues presented and, being a court of record and having jurisdiction of the parties and the subject matter, we find nothing ultra vires in its decree except as hereafter indicated. *Quinn* v. *Peoples Trust & Savings Co.* (1945), 223 Ind. 317, 60 N. E. 2d 281. Execution of the decree, however, rests with the probate court of Marshall County. *Brindley* v. *Meara* (1935), 209 Ind. 144, 198 N. E. 301.

The appellant charges error in the refusal of the court to allow a fee for his attorney. We think the general rule may be stated thus: An attorney cannot look for his fees to one who has not employed him in the absence of a contract, express or implied, or a statute so providing. If, however, an attorney for one litigant has, through his services, brought into the custody of a court of equity a fund that inures not alone to the benefit of his client, but to others similarly situated, he may be compensated out of the fund. *Garvin, Receiver* v. *Rappaport* (1940), 216 Ind. 471,

25 N. E. 2d 249, 5 Am. Jur., Attorneys at Law, §5, p. 352. It is conceded that the estate of William Gibson did not employ the appellant's attorney nor did it acquiesce in the litigation instituted by him. On the contrary the estate employed counsel of its own choosing and interested itself only to the extent of ascertaining the amount of the advancements and other benefits each of the legatees named in the will had received, in order that it might render a proper accounting by way of a final report. Appellant's action has brought no funds into the estate. It has resulted merely in fixing the amount that should be charged against the share of each trust beneficiary in the remaining assets of the estate. There is no basis in equity for allowing the fees of the appellant's attorney as a claim against such assets.

The allowance of indebtedness incidental to the last sickness and burial of Lillian Gibson as claims against her late husband's estate was irregular and technically improper. She left no property aside from her interest in the estate here involved and the evidence indicates she had exhausted that to the mutual benefit of herself and children of whom the appellant is one. The residence property, of which she was the owner under the terms of the will, was made an asset of this estate by the decree in question. Its value had been offset no doubt by her improper use of other funds of the estate but such funds were used for the benefit of the appellant as well as herself and the other legatees. Under the circumstances we see no violence to justice in allowing the claims in question and certainly the action of the court was in harmony with the moral obligation of the appellant and the other children to provide for their mother during her last sickness.

The court's decision in dispensing with the necessity of setting up the testamentary trusts and thus, in effect, terminating them is challenged as outside the ██ issues and contrary to law. In general it may be said that courts have no power, with a few exceptions, to dissolve a trust before the term for which it was created. One of the exceptions recognized by our courts exists where all beneficiaries are competent adults and seek its termination and the whole design and object of the trusts has been practically accomplished. *Wilson, Trustee* v. *Edmonds* (1922), 78 Ind. App. 501, 136 N. E. 48; *Buschbaum* v. *Natl. Bank of Logansport, Tr.* (1936), 102 Ind. App. 679, 4 N. E. 2d 671; *Maley* v. *Citizens Nat. Bank* (1950), 120 Ind. App. 642, 92 N. E. 2d 727. The appellant is objecting to the termination of the trust here involved and as he is one of the beneficiaries thereof we believe that the court exceeded its power in decreeing its termination.

The task of the trial court was a difficult one. No adequate set of books was kept and the practice of the executrix in keeping much of the cash income of the estate in her pocketbook out of which she paid many bills, receipts for which have been lost or mislaid, made an accurate accounting impossible. The court was furnished with evidence, however, showing receipts from the sale of real estate and personal property, the interest received on bonds and bank deposits and rentals on real estate. Cancelled checks, receipts, vouchers, bank statements, check stubs and other exhibits, while not complete, nevertheless indicate where the bulk of the money, received by the executrix during her lifetime, went. Our study of the record convinces us that no amount of litigation can achieve a more just and equitable determination of the issues than that set out

in the decree before us and that a new trial herein could serve no useful purpose and only delay the final settlement of this estate's unfortunate affairs.

We therefore affirm the judgment in all respects except as to the termination of the testamentary trust and direct the trial court to modify its decree in that respect and set up said trust as provided by the will.

NOTE.—Reported in 106 N. E. 2d 102.