**James NEW and Robert New, Appellants,**

v.

**PERSONAL REPRESENTATIVE OF the ESTATE OF Martha NEW, Deceased, Appellee.**

**No. 71A04–0912–CV–744.**

Court of Appeals of Indiana.

Dec. 2, 2010.

Rehearing Denied Feb. 17, 2011.

---

James New, South Bend, IN, Robert New, Castle Rock, CO, Appellants Pro Se.

Robert J. Palmer, John H. Peddycord, May • Oberfell • Lorber, Mishawaka, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

James New ("James") and Robert New ("Robert") (collectively "James and Robert") appeal from the probate court's denial of Robert's Combined Motion to Correct Error, Motion for Relief from Judgment, and Motion for Reconsideration of the court's approval of the Estate of Martha New's ("the Estate") Third Amended Final Accounting. The Estate seeks dismissal of this appeal and/or an award of appellate attorney fees.

We affirm the probate court and remand this matter for determination of appellate attorney fees.

### Issues

James and Robert raise numerous issues for our review, which we consolidate, restate, and reorder as:

   I.    Whether certain assets of the estate were improperly divided and distributed among the heirs;

   II.   Whether James New was improperly deprived of reimbursement of costs advanced on behalf of the Estate;

   III.  Whether the probate court erred in approving the Estate's attorney fees;

   IV.  Whether the personal representative properly accounted for certain debts owed to the Estate; and

   V.   Whether the probate court failed to give James and Robert adequate notice and time to respond to the Estate's Third Amended Accounting.

The Estate in turn requests that we dismiss the appeal for procedural bad faith and failure to comply with this court's procedural rules.

### Facts and Procedural History

Martha New ("Martha") died on September 7, 2006. Martha was survived by Steven New ("Steven"), Claudine New ("Claudine"), Robert, and James (collectively, "the New children"). On June 14, 1993, Martha executed a will ("the Will") and a revocable trust ("the Trust").[1] The Trust was amended on December 16, 1994. These documents were drafted for Martha by attorney James Peddycord ("Peddycord"). The Will was admitted to probate on November 27, 2006, without any challenge to its validity.

The Will designated Claudine and Robert as co-representatives of the Estate, and required that Claudine and Robert act unanimously with regard to affairs of the Estate governed under the Will. The Trust designated all four of the New children as co-trustees. Robert was designated a co-representative because he is an attorney admitted to the practice of law in Colorado and claimed knowledge of estate administration.[2] Claudine and Robert as co-representatives of the Estate retained Natalie Schabler ("Schabler") as attorney for the Estate. After several months, Schabler terminated her representation of the Estate, pointing to dissension among the New children and the hindrance that

---

1. Martha's residence was deeded to the Trust on April 12, 1996.

2. Robert did not seek *pro hac vice* admission to practice in Indiana and pursues this appeal *pro se*.

dissension posed to her representation of the Estate.

On April 30, 2007, Claudine, acting as co-representative, retained Peddycord as counsel for the Estate. In his role as co-representative Robert communicated regularly with Peddycord on estate administration matters, though he questioned Claudine on when and why she retained Peddycord and why she paid Peddycord's retainer with her own funds.

Both Claudine and James were living in Martha's residence without paying rent for some period of time during 2006 and 2007. James was driving Martha's automobile for some or all of that period. In order to sell the home and add the proceeds from the sale to the Estate, it was determined that the house would need to be vacated.

Claudine vacated the residence, but James remained there and continued to drive the car through much of 2007. One of the first matters Peddycord sought to address was the liquidation of the residence and vehicle for the benefit of the Estate. Claudine and Peddycord arrived at a price for the vehicle and pursued an action in ejectment against James to force him to vacate the home. Robert questioned this approach, and James remained in the home until sometime in September or October 2007.

On October 3, 2007, in the face of Claudine's and Robert's inability to come to agreement on the disposition of the house, car, and other personal property, Peddycord petitioned the probate court for direction. The probate court removed Robert as co-representative for the Estate, leaving Claudine as the sole personal representative. The probate court also removed Robert, James, and Steven as trustees for the Trust.

Claudine and Peddycord continued to administer the Estate, liquidating some as-

sets at auction, donating others, and arranging for distribution of estate assets to the New children in compliance with the terms of the Will. On July 6, 2009, the Estate submitted its Petition to Settle the Final Account and Supplemental Petition for the Allowance of Attorney's Fees. James and Robert disputed both the final accounting and the fees. On September 4, 2009, after a Final Accounting and two amended Final Accountings, the court approved the Estate's Third Amended Final Accounting after the Estate made appropriate revisions to these documents as ordered by the court.

On October 7, 2009, Robert filed his Combined Motion to Correct Error Pursuant to Rule 59; Motion for Relief from Judgment Pursuant to Rule 60; and, Motion for Reconsideration of the court's September 4, 2009, order. The court denied this motion on November 11, 2009. On November 19, 2009, the court entered its *nunc pro tunc* order clarifying certain aspects of the procedural posture of the case and restating its dismissal of Robert's motion.

This appeal followed.

Other facts will be supplied as required.

**Discussion and Decision**

*Standard of Review*

Because James and Robert challenge the Third Amended Final Accounting after the probate court's denial of Robert's motion to correct error under Trial Rule 59, we review a trial court's denial of that motion for an abuse of discretion. *Newland Resources, LLC v. Branham Corp.*, 918 N.E.2d 763, 772 (Ind.Ct.App.2009). An abuse of discretion will be found only when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Id.* To the extent a trial court may have erred as a

matter of law in interpreting a statute, however, we review its decisions *de novo*. *Bellows v. Board of Comm'rs of County of Elkhart*, 926 N.E.2d 96, 116 (Ind.Ct.App. 2010).

### Waiver of Issues on Appeal

The Estate moved to dismiss James's and Robert's appeal and to assess attorney's fees for procedural bad faith and violations of the Rules of Appellate Procedure. This court's motions panel denied the motion, and the Estate renews its request in its brief. While we do not dismiss the appeal in its entirety, we find that James and Robert have waived several of the issues they presented for our review.

■ Indiana Rule of Appellate Procedure 46(A) sets forth the standard for the briefs of appellants submitted to this court. The Estate contends that James's and Robert's brief violates this rule, in particular the standard for proper arguments. The Rule states:

> The argument must contain the contentions of the appellant on the issues presented supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.

Ind. Appellate Rule 46(A)(8)(a). To the extent that an issue is advanced without citation to authorities or the record, that issue is waived when the appellant's failure in this regard impedes our review. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 729 (Ind.Ct.App.2009) (citing *Cmty. Care Ctrs., Inc. v. Ind. Family & Soc. Svcs. Admin.*, 716 N.E.2d 519, 530 (Ind.Ct.App. 1999)). This rule serves to "relieve courts of the burden of searching the record and stating a party's case for him." *Id.*

■ James's and Robert's presentation of several of the issues does not comply with Rule 46(A)(8)(a), lacking citations to the record or to applicable authority. The claims regarding unequal distribution of assets to Steven—namely the Estate's decision to give him certain pieces of china and certain pieces of art—provide no citation to the record for any of the asserted valuations or indeed to any record evidence of Steven's receipt of such assets. Nor is any legal authority cited in these sections of the brief.

The argument that James was entitled to reimbursement of expenses is similarly waived for failure to cite to the record.

The issues James and Robert raise regarding the division of debts owed to the Estate—both the promissory note upon which Robert owes a balance to the Estate and the rent James and Robert claim Claudine owes to the Estate for time she spent living in Martha's home—are also waived. Here, James and Robert cite Robert's statements at hearings regarding his promissory note to Martha and claim that Peddycord miscalculated the proper division of that asset among the New children. They argue without any citations to the record that Claudine did not pay any rent and that Peddycord failed to address this issue. Further, there are no citations to authority for these arguments.

Numerous defects obtain in James's and Robert's attempt to reverse the probate court's decision on the Estate's Supplemental Petition for the Allowance of Attorney's Fees. James and Robert accuse Peddycord of perjury, forgery, and the falsification of documents related to the Estate and the Trust without providing citations to the record supporting these assertions. James and Robert make bald assertions of "flagrant disobedience to Indiana's probate law, the Professional Rules of Conduct ... and Indiana Code § 35–44–2–1." (Appellant's Br. 24.) They do not claim Peddycord did no work.

They are instead unhappy with the work performed and wish to pursue a collateral challenge to Claudine's actions as personal representative of the Estate throughout the probate process. Though they cite the Probate Code, the Rules of Conduct, and the criminal statute for perjury, James and Robert articulate no legal basis for reversing the probate court's acceptance of the Amended Third Final Accounting. They also fail to point to evidence that demonstrates that the probate court abused its discretion in granting petitions for attorney fees.

We must also note that neither party has provided this court with copies of the Third Amended Final Accounting at issue. Nor have James and Robert provided us with copies of any of their motions or briefs in support thereof. Absent a complete record, we cannot properly evaluate an appeal.

■ We decline to search the record for evidence. We will not conduct research to remedy deficiencies in the presentation of the case before this court. *See Vandenburgh,* 916 N.E.2d at 729. To the extent James and Robert believe Peddycord may have engaged in professional misconduct, there are other avenues more appropriate for their complaints. *See, e.g., Marcum v. State,* 725 N.E.2d 852, 859–60 (Ind.2000) (holding, in a criminal case, that despite "direct violations of the Rules of Professional Conduct ... reversal of a criminal conviction is not the only forum in which to raise these issues"). James and Robert have waived the issues related to the distribution of assets to Steven, reimbursement of expenses advanced on behalf of the Estate, the distribution and assess-

ment of debts owed to the Estate, and the probate court's grant of the Estate's petitions for attorney fees.[3]

### *The Trial Court's Acceptance of the Third Amended Final Accounting*

■ James's and Robert's only adequately articulated argument is their claim that the trial court erred as a matter of law by failing to give them notice of the Third Amended Final Accounting and an opportunity to be heard thereon.

Indiana Code Section 29–1–17–2(a) requires that, after the period for the filing of claims against an estate has elapsed and all such claims (except for contingent or unmatured claims) have been disposed of, a final account shall be rendered to the probate court along with a petition to decree the final distribution of the estate. That section also provides for notice of hearing on the petition pursuant to Indiana Code Section 29–1–16–6. Section 29–1–16–6(b) also requires the clerk to distribute notice of a final account of an estate "to all persons entitled to share in [its] final distribution." The clerk must send that notice fourteen days prior to the date designated for the submission of any objections to the distribution. *Id.*

James and Robert contend that the Third Amended Final Accounting was approved by the probate court nine days after it was submitted and without notice to the parties, and that the court thereby erred as a matter of law. For its part, the Estate refers us to *Shuey v. Lambert* for the proposition that the Third Amended Final Accounting is a judgment by the trial court, and not an amended pleading:

---

**3.** James and Robert note that "[w]aiver is the voluntary and intentional relinquishment of a known right." (Appellant's Reply Br. 20.) We take this assertion to relate to their inquiry into the value of assets disposed of by the Estate. As such it has no bearing upon the nature of the waiver we find here and which the Estate asserted in its brief, which stems from the procedural deficiencies of the briefs James and Robert submitted to this court.

*Where exceptions are filed* to a final report of an executor, *and, upon trial of the issues* so joined, some of the exceptions are sustained, and *the executor ordered to amend his report* in accordance with the finding of the court, *which he does, and the court thereupon approves the report,* it has been held that such amended report filed in obedience to the order of the court after trial of the exceptions is not filed in the sense of an amended pleading, and that *the report as amended and approved in such case is in fact the judgment of the court.* From this it follows that appellant's exceptions to the conclusions of law are still effective to test the correctness of such conclusions on any question affecting his legal rights which was originally raised by such exceptions, unless the amendments ordered by the court and made by the executor have cured the error, if any, shown by such exceptions when taken.

*Shuey v. Lambert,* 53 Ind.App. 567, 102 N.E. 150, 151–52 (1913) (citations omitted) (emphasis added).

*Shuey* is one in a line of cases that hold the accounting to be a complaint and exceptions to the accounting as answers to the complaint. *Id.*; also *Lehnen v. State,* 693 N.E.2d 580, 583 (Ind.Ct.App.1998) (applying the rule to appraisers' reports in eminent domain actions), *trans. denied; Best Realty Corp. v. State,* 400 N.E.2d 1204, 1205–06 (Ind.Ct.App.1980) (also applying to eminent domain actions); *Pohlmeyer v. Second Nat. Bank of Richmond,* 118 Ind.App. 651, 660, 81 N.E.2d 709, 713 (1948) (applied in the context of an estate). Taken with the rule in *Shuey,* the Third Amended Final Accounting approved by the probate court here is a final order subject to challenge under Trial Rule 59 or on appeal because, coming pursuant to court order as a corrected version of the Second Amended Final Accounting which the court in turn approved, it constitutes a final judgment by the probate court. James and Robert therefore had no right to notice and an opportunity to be heard on the Third Amended Final Accounting after the Estate submitted it to the court for approval.

James and Robert urge that this logic means they "would be left having to accept whatever was reported in the third amended final accounting without the benefit of any review," and point to errors in the Second Amended Final Accounting that were corrected in the Third Amended Final Accounting as examples of the types of errors they claim would be avoided by their approach. (Appellant's Reply Br. 14.) This argument is simply not credible.

We note first that Indiana's Probate Code expressly affords a right of appeal to "[a]ny person considering himself aggrieved by any decision of a court having probate jurisdiction in proceedings under this article" to an appellate court of competent jurisdiction. I.C. § 29–1–1–22. James and Robert challenged the probate court's entry of the Third Amended Final Accounting: first before the probate court with Robert's Combined Motion to Correct Error/Motion for Relief from Judgment/Motion for Reconsideration, and then before this court. James and Robert can hardly be heard to say they have not had "the benefit of any review."

Moreover, under James's and Robert's interpretation of the statute, *every* accounting would require notice and a hearing. Thus the only way an estate could be closed is if all interested parties agreed to the accounting with no objection. This interpretation of the statute would allow any interested party with standing to challenge an accounting to control the probate process until that party—and any other party—is satisfied with the outcome.

We refuse to adopt an interpretation that would lead to an absurd result that is so contrary to the purpose of Indiana's probate scheme: to close the estate "as promptly as possible." I.C. § 29–1–16–2. As we have noted before:

> When a statute is ambiguous, we are compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and difficulty and prefer public convenience. In our interpretation, we must be mindful of the purpose of the statute and the effect of such an interpretation. Further, in interpreting the statute, we will read the statute as a whole, attempting to give effect to all provisions so that no section is held meaningless if it can be reconciled with the rest of the statute.

*In re Estate of Inlow,* 735 N.E.2d 240, 251 (Ind.Ct.App.2000) (citations and quotations omitted).

We cannot accept James's and Robert's argument that any accounting must be subject to notice and hearing to interested parties. Such an interpretation is unworkable, as the most contentious estates would never be closed if we adopted James's and Robert's interpretation of the statute. It also defeats the purpose of the relatively short periods set forth by the Probate Code for the steps of the probate process.

In light of the foregoing, we hold that the probate court did not err as a matter of law when it approved the Estate's third amended accounting without affording time for notice and a hearing.

### Appellate Attorney Fees

As in its prior motion before this court, the Estate asserts that James's and Robert's brief does not comply with Rule 46(A)(6), which governs the statement of facts in an appellant's brief. This Rule requires that appellants cite the Record or Appendix, that facts be stated in accor-dance with the applicable standard of review, and that the facts be presented in a narrative form. App. R. 46(A)(6)(a)–(c). Rule 46(A)(8) requires that arguments "contain the contentions of the appellant on the issues presented, supported by cogent reasoning" and "citations to the authorities, statutes, and the Appendix or parts of the Record." This court has held that where relevant facts were omitted and the statement of facts contained subjective argument combined with noncompliance with Rule 46(A)(8), such noncompliance constitutes procedural bad faith that may entitle the non-offending party to appellate attorney fees. *Thacker v. Wentzel,* 797 N.E.2d 342, 347 (Ind.Ct.App.2003); App. R. 66(E).

James and Robert present a statement of facts littered with argumentative statements that do not comply with the standard of review. A few examples suffice to illustrate the defects of the whole. The brief states that "Ms. New's admission makes clear that she did not act in accordance with Indiana law or the decedent's final instructions with respect to the retention of estate of trust counsel." (Appellant's Br. 12.) This statement draws factual and legal conclusions without citation and cannot reasonably be considered to accord with the standard of review, which favors the Estate.

James and Robert go on to claim that Peddycord falsified the First Amendment to the Trust. Yet there are no citations to the record to support this claim. James and Robert go on to allege that Peddycord committed perjury by submitting his affidavit for attorney fees, asserting that Peddycord lied when he said that he had not received any payment for services rendered to the Estate. Aside from citing Indiana law (again, as argumentation and not statement of fact in accord with the standard of review) and the language of

the petition for fees, James and Robert provide no citation to the Record that supports the assertion that Peddycord committed perjury.

Finally, James and Robert claim that the original attorney for the Estate, Natalie Schabler, withdrew as counsel "due to a personal matter wholly unrelated to her representation here." (Appellant's Br. 11 n. 3.) This assertion cites Robert's non-testimonial hearsay statements at a hearing before the probate court. Yet a memorandum from Schabler indicates that she had "already been met with resistance from a few of you" and that she believed she would be "unsuccessful in obtaining unanimous agreement regarding any proposed plan." (Appellee's App. 23.)[4]

We need not search the record for support for James's and Robert's statements, attempt to reconcile statements that do not conform to the standard of review based upon conflicting evidence, or consider issues that James and Robert leave unarticulated. *Vandenburgh,* 916 N.E.2d at 729. Their briefs rail against the personal representative and the attorney for their mother's estate, all the while failing to present an appropriately framed statement of facts or proper argument on many points. Such defects would be inappropriate in any brief, but are even more so here where the defects dominate. Finding James and Robert to have engaged in procedural bad faith before this court, we remand this matter to the probate court for the exclusive purpose of determining appropriate appellate attorney fees arising from the Estate's defense of this appeal.

## Conclusion

James and Robert have waived numerous issues they raised before this court because they failed to cite the record or authority in support of their arguments. The probate court did not err as a matter of law when it did not afford James and Robert notice and a hearing before it approved the Estate's Third Amended Final Accounting. Moreover, we find that James and Robert have engaged in procedural bad faith in their pursuit of this appeal, and that attorney's fees should therefore be assessed against them.

Affirmed and remanded.

RILEY, J., and KIRSCH, J., concur.

---

4. This document was presented to the probate court as an exhibit in reply to James's and Robert's objections to the Estate's petition for interim attorney fees and to this court in the Estate's Appendix.