**FILED**



**CLERK**
of the supreme court,
court of appeals and
tax court

**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**CAROLYN J. NICHOLS**
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Office of the Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF:                                    )
J.C. and A.M.C. (Minor Children),                    )
CHILDREN IN NEED OF SERVICES, and                    )
                                                     )
A.K.C. (Mother),                                     )
                                                     )
    Appellant/Respondent,                           )
                                                     )
    vs.                                             )    No. 29A04-1305-JC-216
                                                     )
INDIANA DEPARTMENT OF                                )
CHILD SERVICES,                                      )
                                                     )
    Appellee/Petitioner.                            )

APPEAL FROM THE HAMILTON CIRCUIT COURT
The Honorable Paul A. Felix, Judge
The Honorable Todd L. Ruetz, Master Commissioner
Cause Nos. 29C01-1210-JC-1559 and 29C01-1210-JC-1560

**December 19, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A.K.C. ("Mother") appeals a trial court adjudication designating her two sons as children in need of services ("CHINS"). Finding the evidence sufficient to support J.C.'s designation as a CHINS, we affirm with respect to J.C. Finding the evidence insufficient with respect to A.M.C., we vacate his designation as a CHINS.

**Facts and Procedural History[1]**

Mother has two sons, J.C., born March 1997, and A.M.C., born April 2001. In December 2011, high school freshman J.C. was arrested and charged with possession of drug paraphernalia. In March 2012, Mother signed an agreement pursuant to which J.C. would receive six months of informal probation, in return for which he would not be expelled, subject to abiding by the conditions contained in the agreement. The conditions included attending substance abuse assessments and counseling and meeting monthly with his probation officer, Amy Turean. When J.C. failed to appear for his monthly meeting in June 2012, Officer Turean phoned Mother and reminded her that J.C.'s failure to attend could result in his being turned over to the prosecutor for formal probation. J.C. attended his July meeting with Officer Turean but failed to attend his August meeting.

In the fall of 2012, J.C. (then a sophomore) and A.M.C. (then age eleven) were truant for several days. As a result, Officer Turean and the Carmel police conducted a welfare check at the home. Both boys were home, and Mother was not. J.C. said that he was ill, did

---

[1] The statement of facts in Mother's brief is argumentative. We remind Mother's counsel that the statement of facts section of an appellant's brief shall not contain subjective argument. Ind. Appellate Rule 46(A)(6), -(8); *New v. Pers. Representative of Estate of New*, 938 N.E.2d 758, 765 (Ind. Ct. App. 2010), *trans. denied* (2011).

not have clean clothes to wear, and had been bullied at school. Officer Turean phoned Mother, who never responded to the call. When J.C. told the probation officer and school guidance counselor that he had considered suicide and had engaged in cutting himself, Officer Turean phoned Mother again and instructed her to take J.C. to a nearby hospital for a mental health evaluation. Mother complied.

The Department of Child Services ("DCS") filed CHINS petitions for J.C. and A.M.C. in October 2012, citing both boys' truancy and citing J.C.'s probation, substance abuse, mental health issues, suicidal ideations, self-mutilation, and consternation associated with impregnating his girlfriend. The petitions also cited Mother's failure to communicate with school personnel and J.C.'s probation officer and her nonresponsiveness to their phone calls concerning the needs of the children.

Officer Turean extended J.C.'s informal probation for three months. J.C. admitted to Officer Turean that he had experimented with illegal drugs during his probation. After numerous negative drug screens, J.C. tested positive for marijuana and amphetamines in November and December 2012. Eventually, Officer Turean referred him to the prosecutor for formal probation.

Following a factfinding hearing in February 2013 and a dispositional hearing in April 2013, the trial court issued dispositional orders designating both J.C. and A.M.C. as CHINS. Mother now appeals the CHINS determinations for both boys. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother claims that the trial court erred in designating J.C. and A.M.C. as CHINS. In a CHINS proceeding, we review for clear error. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the trial court's decision. *Id.*

In a CHINS proceeding, the State bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). To meet its burden of establishing CHINS status, the State must prove that the child is under age eighteen,

> (1)  the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2)  the child needs care, treatment, or rehabilitation that:
>
> > (A)  the child is not receiving; and
> >
> > (B)  is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.

A CHINS designation focuses on the condition of the child rather than on an act or omission by the parent. *N.E.*, 919 N.E.2d at 105. Whereas the acts or omissions of one parent can cause a condition that creates the need for court intervention,

> [a] CHINS adjudication can also come about through no wrongdoing on the part of either parent, e.g., where a child substantially endangers the child's

4

own health or the health of another individual; or when a child is adjudicated a CHINS because the parents lack the financial ability to meet the child's extraordinary medical needs.

While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent. Only when the State moves to terminate a particular parent's rights does an allegation of fault attach. We have previously made it clear that CHINS proceedings are "distinct from" involuntary termination proceedings. The termination of the parent-child relationship is not merely a continuing stage of the CHINS proceeding. In fact, a CHINS intervention in no way challenges the general competency of a parent to continue a relationship with the child.

*Id.* (citations omitted). Because each CHINS determination is focused on the condition of the individual child, we address Mother's children separately.

## I. J.C.

Mother asserts that the evidence is insufficient to support the trial court's designation of J.C. as a CHINS. In its CHINS petition, DCS made the following allegations with respect to J.C.:

a.) On or between 8/13/12 and 9/11/12, the child has missed approximately half of the scheduled school days, without authorization or excuse.

b.) The child is on probation for a substance abuse juvenile delinquency true finding, and self-reports continued use of illegal drugs.

c.) The child has engaged in self-harming behaviors, including cutting himself. He expresses suicidal thoughts, and is not appropriately utilizing mental-health medications to address his current diagnosis of Major Depressive Disorder.

d.) The child frequently leaves the family home without permission, and remains away from the home without reporting his whereabouts or when he will return. The child is also expecting the birth of a child

5

through a high-school girlfriend, and is overwhelmed at the prospect of his pending parental responsibilities.

[e.)] The child's mother does not engage with treatment providers, the child's probation officer, or the child's school, to address the numerous issues that the child has expressed or exhibits. She has failed to participate in communication with DCS, the probation officer, or the school counselors, and has failed to fulfill parental obligations.

Appellant's App. at 42-43.

The record shows that in December 2011, J.C. was arrested and charged with possession of drug paraphernalia. In March 2012, he was placed on a six-month informal probation, subject to certain conditions. If he met the conditions, he would not be expelled from school. Mother signed an agreement taking responsibility for helping J.C. complete the requirements of his informal probation, i.e., completing a drug and alcohol assessment, writing a paper, and meeting with his probation officer monthly. Mother failed to bring J.C. to two of his summer appointments with Officer Turean. The officer testified that she had left unreturned voicemail messages for Mother. She also testified that J.C. had admitted to experimenting with drugs such as LSD, peyote, and marijuana during his probation period. His drug screens came back negative until November and December 2012, when he tested positive for marijuana and amphetamines. His informal probation was deemed unsuccessful, and he was eventually referred to the prosecutor's office for formal probation. To stay in good standing at school, J.C. was required to meet regularly with a guidance counselor and to participate in drug treatment and community service. Mother took him to the drug treatment program, which he eventually completed. The school counselor testified that Mother was difficult to reach and was unresponsive when she called to inquire about J.C.'s ten-day

truancy. The DCS family case manager also reported difficulty in getting Mother to return his phone calls. With respect to J.C.'s mental health and depression issues, J.C. told his counselor and probation officer that he had been suicidal and had engaged in cutting (self-mutilation). Mother did respond to Officer Turean's instructions to take J.C. for a mental health evaluation.

Mother admits that J.C. has had a troubled past and made poor choices. However, she claims that court intervention is not necessary to ensure that his problems are addressed. As support, she cites her efforts to take him to drug treatment and mental health programs and evaluations as evidence of her vigilance in addressing his problems. In this vein, we note that the prevailing theme throughout the testimony by the probation officer, counselors, and family case manager illustrated Mother's pattern of poor communication and failure to respond to messages concerning J.C.'s treatments, school attendance, and legal circumstances. Notwithstanding, we reiterate that a CHINS determination is not focused primarily on the parent's acts or omissions, but rather, on the child's condition. Moreover, to the extent that she challenges the evidence concerning J.C.'s impregnating his girlfriend, testing positive for drugs, or physically harming himself, she invites us to reweigh evidence and judge witness credibility, which we may not do.

In short, the evidence supports the trial court's designation of J.C. as a CHINS. Consequently, we affirm the trial court in this respect.

## II. A.M.C.

Mother also asserts that the evidence is insufficient to support the trial court's designation of A.M.C. as a CHINS. In its CHINS petition, DCS made the following allegations with respect to A.M.C.:

a.) On or between 8/13/12 and 9/11/12, the child has missed approximately seven scheduled school days, without authorization or excuse.

b.) The *child's sibling* is on probation for a substance abuse juvenile delinquency true finding, and self-reports continued use of illegal drugs.

c.) The *child's sibling* has engaged in self-harming behaviors, including cutting himself. He [the sibling] expresses suicidal thoughts, and is not appropriately utilizing mental-health medications to address his current diagnosis of Major Depressive Disorder.

d.) The *child's sibling* frequently leaves the family home without permission, and remains away from the home without reporting his whereabouts or when he will return. The child['s sibling] is also expecting the birth of a child through a high-school girlfriend, and is overwhelmed at the prospect of his pending parental responsibilities.

[(e.)] The child's mother does not engage with treatment providers, the *sibling's* probation officer, or the child's school, to address the numerous issues that the sibling has expressed or exhibits. She has failed to participate in communication with DCS, the probation officer, of the school counselors, and has failed to fulfill parental obligations.

*Id*. at 44-45 (emphases added).

We reiterate that each CHINS determination is very specific to the condition of that particular child. Here, both of the children's CHINS petitions emphasize *J.C.'s* problems of substance abuse, depression, unknown whereabouts, and girlfriend's pregnancy. The only

allegation in A.M.C.'s petition that pertains directly to A.M.C. is his seven-day truancy.[2] The record is devoid of evidence indicating that his absences for a relatively brief period seriously endangered him or that truancy has continued to be a problem for A.M.C. Likewise, neither the petition nor the evidence reveals any specific ways in which J.C.'s problems with substance abuse, depression-related behaviors, or impending fatherhood have had a dangerous or negative impact on A.M.C. Without such evidence, there is no basis for adjudicating A.M.C. a CHINS.

Simply put, DCS failed to meet its burden of demonstrating that A.M.C.'s condition was seriously endangered. Based on the foregoing, we conclude that the trial court clearly erred in designating A.M.C. as a CHINS. Accordingly, we vacate the CHINS adjudication with respect to A.M.C.

Affirmed in part and vacated in part.

BAKER, J., and NAJAM, J., concur.

---

[2] The State admits that "the only evidence regarding child A.M.C. is that the child missed seven days of school in September of 2012 and had a skin condition that needed treatment." Appellee's Br. at 12.

9