**Lawrence H. HINDS, as Trustee for Ralph G. Sickels, Evelyn R. Sickels, Helen C. Sickels, Winifred Sickels Mitchell, and Gracia Sickels Adelman, Appellant (Defendant–Intervenor Below),**

**and**

**Elizabeth H. Hamacher, Administratrix d/b/n, w.w.a., of the Estate of Xen McNair, Sr., Deceased, Estate No. CE69–92, Lake Circuit Court, Appellant (Defendant–Intervenor Below),**

**v.**

**Xen McNAIR, Jr., Appellee (Plaintiff–Cross–Defendant Below),**

**Norma McNair, Individually and as Executrix of the Estate of Xen McNair, Sr., Deceased, Estate No. CE69–92, Lake Circuit Court, Appellee (Defendant Below),**

**and**

**John Parramore, Guardian of Virginia Parramore, a Minor, and Milan Uzelac, Appellees (Cross–Defendants Below).**

No. 3–1275A291.

Court of Appeals of Indiana, Fourth District.

Dec. 1, 1980.

Beckman, Kelly & Smith by John F. Beckman, Jr., Hammond, Bredell, Martin & McTurnan by Lawrence McTurnan, Indianapolis, Leon Kaminski, LaPorte, for appellant Lawrence H. Hinds.

Hamacher & Sendak by Elizabeth H. Hamacher, David M. Hamacher, Crown Point, for appellant Elizabeth H. Hamacher.

Clarence Borns, Borns, Quinn, Kopko & Lindquist, Professional Corp., Merrillville, John R. Nesbitt, Nesbitt, Fisher & Daugherty, Rensselaer, for appellee Xen McNair, Jr.

Fred M. Cuppy and Gerald K. Hrebec, Thomas, Burke, Dyerly & Cuppy, Max Cohen, Cohen & Thiros, Gary, for appellee Norma McNair.

James A. Holcomb and Robert F. Peters, Lucas, Clifford, Kane & Holcomb, Robert A. Lucas, Merrillville, for appellee John Parramore.

MILLER, Judge.

Appellants Elizabeth Hamacher, Administratrix of the Estate of Xen McNair, Sr., and Lawrence H. Hinds appeal from their unsuccessful attempt to reach assets which have been the res of an oral trust created in 1931 by Xen McNair, Sr. and his then wife Esther McNair. The beneficiaries were their daughter and son, Sonia McNair and Xen McNair, Jr. The creation and existence of the trust had earlier been recognized by our Supreme Court in *Hinds v. McNair*, (1955) 235 Ind. 34, 129 N.E.2d 553, wherein Hinds, representing judgment creditors of McNair, Sr., failed in his claim that the trust was fictitious and a fraudulent concealment of the assets of McNair, Sr.

The present action was filed in 1963 by McNair, Jr., against McNair, Sr. to remove the latter as trustee and establish McNair, Jr.'s beneficial and equitable ownership in the entire res of the trust after his sister's death in 1962. In the course of these proceedings, McNair, Sr. also died (in 1969) and his estate and the heirs of his deceased daughter became parties. McNair, Jr. then amended his complaint and asked for an accounting and distribution of the assets and for damages due to mismanagement. Hinds attempted to intervene in the action and, after being denied that right by the trial court, was successful in this Court in *Hinds v. McNair*, (1972) 153 Ind.App. 473, 287 N.E.2d 767. The cause was remanded to permit Hinds to intervene and assert claims which might result in the inclusion of the trust res in the estate. On remand, he claimed alternatively that: (1) there was never a trust; (2) if a trust existed, it was revocable and had been revoked by McNair, Sr. before his death; (3) it had terminated because its purpose was no longer capable

of being served; (4) Sonia McNair's death caused her gift to lapse and become property of McNair, Sr. by a resulting trust or (5) that fraud was allegedly committed by McNair, Jr., the heirs of Sonia, and McNair, Sr.'s widow Norma, appellees herein, by their execution of a settlement agreement dividing the trust res.

Also after remand, Hamacher, as administratrix of McNair, Sr.'s estate, was permitted to intervene and adopt Hinds' defenses. On September 18, 1975, the trial court held the trust had not been terminated during the life of McNair, Sr. and therefore Hinds and Hamacher had no interest in the trust assets. They appeal asserting numerous errors.

We affirm.

The consolidated arguments raised by appellants Hinds and Hamacher present the following issues for review:

1) Was it contrary to law for the trial court to rule the trust was not revocable, had not been revoked, did not terminate for failure of purpose, and did not lapse upon the death of co–beneficiary Sonia McNair?

2) Did the trial court err in concluding there was no evidence to support the claim of fraud allegedly committed by McNair, Jr., McNair, Sr.'s widow, Norma, and Sonia's heirs?

3) Was it contrary to law for the trial court to dismiss McNair, Jr.'s action for an accounting, distribution and damages caused by mismanagement while retaining jurisdiction over Hinds' and Hamacher's counteraction?

4) Was the trial court's granting of partial summary judgment on the existence of a trust as of 1955, based on the doctrines of law of the case and res judicata, contrary to law?

5) Did the trial court commit other procedural errors including a) the denial of Hamacher's motions for continuance of the trial date; b) the striking of Hamacher's cross-claim and c) the denial of Hamacher's motion to correct the record relating to information concerning the status of McNair, Sr.'s estate?

For clarity, the persons involved in the events surrounding this appeal are described herein:

*Xen McNair, Sr.*, defendant in the proceedings supplemental to execution which culminated in the 1955 *Hinds v. McNair* decision, co–settlor and trustee of the disputed oral trust of common stock of the Gary Real Estate Exchange, Inc., and one of the original defendants in the present litigation. He died in Florida on May 6, 1969.

*Esther McNair*, Xen McNair, Sr.'s wife from approximately 1924 until the parties divorced in 1948, and co–settlor of the disputed oral trust. She died on January 7, 1968.

*Norma McNair*, Xen McNair, Sr.'s wife at the time of his death, who qualified as executrix of his estate in Florida and Indiana, and who was substituted for Xen McNair, Sr., as a party defendant in the present litigation after his death. She was also added in her individual capacity as a defendant in the present litigation and is an appellee in the case before us. In the current action she was replaced by Hamacher as the representative of McNair, Sr.'s estate.

*Xen McNair, Jr.*, natural son of Xen McNair, Sr. and Esther McNair, beneficiary of the disputed oral trust, original plaintiff in the present litigation, and appellee in the case before us.

*Sonia McNair Parramore Uzelac*, natural daughter of Xen McNair, Sr. and Esther McNair, and beneficiary of the disputed oral trust who died in 1962, leaving as her survivors her minor daughter Virginia Reed Parramore and her second husband Milan Uzelac.

*Virginia Reed Parramore*, minor daughter of Sonia McNair and John Parramore, who appears as an intervenor–defendant–appellee in this litigation by her father John Parramore.

*Milan Uzelac*, husband of Sonia McNair at the time of her death in 1962 who appears as an intervenor–defendant in the trial court and appellee herein.

*Lawrence Hinds*, trustee for the successors to the original 1943 judgment against Xen McNair, Sr., which gave rise to the 1955 *Hinds v. McNair* case, and who appears as intervenor–defendant–appellant in the case before us.

*Elizabeth Hamacher*, Administratrix, d/b/n, w/w/a of the Estate of Xen McNair, Sr., in Lake County, Indiana, who represented the interests of the estate in the trial court and appears as an intervenor–defendant–appellant in the case before us.

*Jo Ann Gray*, adopted daughter of Xen McNair, Sr., named as a devisee in Xen McNair, Sr.'s will, and not a party to this action.

## BACKGROUND

The events giving rise to the current dispute span over fifty years including litigation beginning twenty–five years ago. The original *Hinds v. McNair* decision in 1955 was the culmination of proceedings supplemental to execution brought by Hinds, representing creditors to enforce a judgment of approximately $160,000 against McNair, Sr. The proceedings supplemental action centered primarily on whether McNair, Sr. owned certain assets, including shares of stock of Gary Real Estate Exchange, Inc. and real property titled in the name of that corporation, or whether he held them as trustee pursuant to an oral trust created in 1931 for the benefit of his son and daughter, McNair, Jr. and Sonia. During the ensuing jury trial, substantial evidence was heard concerning ownership of the stock and real property including testimony of McNair, Sr. describing in detail the terms of the trust. The resulting jury verdict in favor of McNair, Sr. was subsequently appealed and affirmed by the Indiana Supreme Court. It concluded:

"Looking at the evidence most favorable to the appellee, McNair, in view of the verdict in his favor, there are here all the elements necessary to create a trust, with the legal title in McNair and the beneficial interest in the children of McNair and wife. The appellants alleged and raised the issue of fraudulent concealment of *assets of McNair* by a fictitious trust in this case. The jury found in the negative and against appellants on all issues including that of fraudulent concealment, even if we assume he *originally* owned stock which became the trust *res.* Therefore, the attack on the alleged trust fails and it stands unimpeached." (Emphasis in original)

*Hinds v. McNair*, 235 Ind. at 53, 129 N.E.2d at 564. Thus, Hinds failed in his attempt to reach the assets of McNair, Sr., and the judgment against the latter remained unsatisfied.

McNair, Jr. initiated the second phase of this case in 1963 by filing a complaint seeking removal of McNair, Sr. as trustee due to alleged mismanagement of the trust assets. After McNair, Sr. died in 1969 leaving a will, which distributed his estate without regard to the terms of the trust,[1] McNair, Jr. amended his complaint substituting McNair, Sr.'s widow, Norma McNair, individually and as Executrix of McNair, Sr.'s estate, and requested an accounting and distribution of the assets in addition to damages allegedly caused by mismanagement. McNair, Jr. also added Parramore, his deceased sister's child, claiming entitlement to all the trust assets, including his sister's share. Norma answered by denying the existence of a trust, and Parramore answered claiming Sonia's interest in the trust belonged to her daughter, Virginia. Petitions for intervention were also filed. Uzelac, Sonia's surviving husband, was allowed to intervene claiming an interest in the trust res as Sonia's heir. But Hinds, representing judgment creditors, was denied intervention. Almost immediately thereafter, McNair, Jr., Parramore, Uzelac and Norma in her individual capacity entered into a settlement and compromise agreement providing for distribution of the trust corpus in the event the trial court ruled the trust had not been revoked, repu-

1. The approximately 1500 shares of stock constituting the trust res were bequeathed under the will as follows: 100 shares to Virginia Parramore, 698 shares to Jo Ann Gray and the remainder to Norma McNair.

diated or rescinded.[2] After a trial on these issues the court entered judgment against the estate and ordered distribution under the agreement.

Hinds appealed the order overruling his motion to intervene, presenting this Court in 1972 with several issues for review, including whether the parties were bound by the 1955 decision, the court applied the doctrine of res judicata and concluded "the parties herein are bound by the determination that a trust of the property here in question existed at the time." *Hinds v. McNair*, 153 Ind.App. at 481, 287 N.E.2d at 771. Although Hinds was in privity with Norma, as Executrix, the Court acknowledged that Hinds' interest was inadequately represented by Norma since she individually compromised certain issues by entering into the settlement agreement. The Court recognized that Hinds' judgment could only be satisfied by showing the trust terminated in some manner during the lifetime of McNair, Sr., so that the trust res became a part of his estate and subject to the claims of creditors. The cause was remanded requiring the court to consider Hinds' petition to intervene.

The events on remand gave rise to the present appeal. Hinds was allowed to intervene and file a response, which denied the establishment of a trust and which contained assertions in the nature of counterclaims including allegations of the trust's revocation, termination or lapse. Prior to trial, Hamacher, who had been appointed Administratrix, d/b/n, w/w/a, of McNair, Sr.'s estate, was allowed to intervene replacing Norma as representative of the estate, and to adopt Hinds' pleadings. McNair, Jr., alleging the continued existence of the settlement agreement with Parramore, Uzelac and Norma, moved for and was granted a dismissal of his action for an accounting, distribution and damages caused by mismanagement. Thus the only remaining issues to be resolved by the court were those presented by Hinds' and Hamacher's attack on the continuing existence of the trust at the time of McNair, Sr.'s death.

When the cause proceeded to trial, Hinds and Hamacher presented evidence consisting primarily of statements and actions of McNair, Sr. which they now allege imply the latter's original intent to reserve a power to revoke and his later exercise of such power, whereby he gained both legal and beneficial interests in the assets. Contradicting evidence was also received, perhaps the most significant of which was the original trial transcript containing Xen McNair, Sr.'s testimony on "each and every term of the trust" which did not reveal the inclusion of a power to revoke or modify. At the close of the evidence, the trial court issued findings of facts which may be summarized as follows: 1) the settlors did not reserve a power of revocation; the trust was not revoked; the trust did not lapse or terminate, 2) based on the foregoing, Hamacher had no interest in the trust or its assets, and 3) no evidence of probative value was received on the allegation of fraud.[3] Judgment was entered against Hinds and Hamacher from which they bring this appeal.

## I. *REVOCATION OF TRUST*

After determining by partial summary judgment a valid trust had been created and was in existence in 1955, a ruling challenged by Hinds and Hamacher and discussed *infra*, the trial court held a hearing on the issues which included those of revocation and revocability. In the final judgment of September 18, 1975, the trial court found the settlors had not reserved a power of revocation and the trust had not been revoked. Hinds and Hamacher maintain this ruling was contrary to law, insisting the circumstances surrounding the creation

---

2. The agreement provided for division of the trust res as follows: 42½% to McNair, Jr., 25% to Parramore, 25% to Norma McNair, 7½% to Uzelac.

3. In his third paragraph of his response Hinds alleged a constructive trust should be imposed on the proceeds in his favor. He claimed Norma's participation in the agreement was evidence of fraud, all parties had "connived" to deprive the creditors of recovery on their judgment, and they should not be allowed to benefit by such "connivance."

of the trust and McNair, Sr.'s statements and conduct after the 1955 decision evidence both revocability and revocation.

■ We first caution the reader that Hinds and Hamacher had the burden of proof on these issues as well as the other issues discussed *infra,* and are therefore appealing from a negative judgment.[4] *National Life & Accident Insurance Co. v. Neuhoff,* (1967) 140 Ind.App. 603, 224 N.E.2d 690; *Phillips Petroleum Co. v. Maple Road Realty Co.,* (1952) 123 Ind.App. 355, 109 N.E.2d 440, 441. In determining whether a negative judgment, based on proceedings at law or in equity, is contrary to law we neither reweigh the evidence nor review the credibility of witnesses but consider only the evidence most favorable to the successful parties together with all reasonable inferences therefrom. Unless the evidence leads to but one conclusion not reached by the trial court the decision will not be disturbed. *Indiana Consolidated Insurance Co. v. Mathew,* (1980) Ind.App., 402 N.E.2d 1000; *Lawyers Title Insurance Corp. v. Capp,* (1977) Ind.App., 369 N.E.2d 672. *Chaney v. Tingley,* (1977) Ind.App., 366 N.E.2d 707. We also note, in the instant case, the evidence introduced at trial must be viewed in light of the critical requirement that a power to revoke, change or amend the terms of a trust, whether created by parol or instrument, must be reserved at the time of the trust's creation. Absent evidence of an express reservation of power retained by the settlor at the time of creation, the trust is presumed irrevocable:

"Ordinarily, the inference is that the trust is irrevocable unless an intention to reserve a power of revocation can be gathered from the language used by the settlor or from the character of the trust or from the circumstances of its creation."

4. With regard to the counterclaims, neither Hinds nor Hamacher disclaim their burden of proof on these issues. They do, however, suggest McNair, Jr. failed to prove the creation and existence of a trust, which failure relieved Hinds and Hamacher of their burden on the counterclaims. In disposing of this argument we note the 1955 and 1972 decisions conclusively established the existence of a trust in

IV *Scott on Trusts,* § 330.2 (3rd ed. 1967). *See also Bircher v. Wasson,* (1962) 133 Ind. App. 27, 180 N.E.2d 118; Restatement (Second) of Trusts § 330; 89 C.J.S. *Trusts* § 88b (1955). Therefore we must proceed to consider whether the only conclusion the trial court could have reached from the evidence was that the settlors had reserved a power of revocation.

■ The extensive evidence presented at trial consisted primarily of a transcript of all testimony from the prior 1955 proceeding and various depositions taken after the present case was originally filed. The significant exhibits submitted for consideration were the following: 1) the transcript of the original *Hinds v. McNair* case which gave rise to the 1955 Supreme Court decision; 2) the deposition of Xen McNair, Sr. obtained in 1969 shortly before his death; and 3) the deposition of Xen McNair, Sr. obtained in 1965.[5] The final judgment contained a finding that "from the time of the establishment of the Trust to the date of the death of Xen McNair, Sr., the settlors reserved no power of revocation [and] the Trust was not revoked...." We hold the evidence supported the trial court's finding in this regard, and thus did not lead to the sole conclusion proposed by Hinds and Hamacher.

Most pertinent to our decision is the following testimony on the terms of the trust referred to in the 1955 *Hinds v. McNair* decision and contained in the trial transcript:

"Q. You told the jury something about a trust agreement with your wife, state to the jury *each and every term* of that agreement.

MR. LA RUE: Was this agreement oral or in writing?

1955, a matter reaffirmed by the trial court in granting partial summary judgment on this issue. We conclude, *infra,* the court was correct in this ruling.

5. Hinds and Hamacher do not argue that any significant evidence could be derived from depositions of Norma McNair.

A. This was an oral agreement.

MR. LA RUE: Allright. [sic]

A. Mrs. McNair and I had discussed this trust along this line, we talked about setting up a trust for the children and I don't know, I presume that I made the suggestions as to the way it would be, but I reasoned with her that she had a few things and I had some other things but we are going into this Gary Real Estate Exchange and that now that we had the two children that *we should provide something that ultimately they would have.* She added to that that we should not only do that but take out some additional policies in life insurance companies for them.

Q. Did you take out those policies?

A. Yes. So I said how should we figure we should do this, or she might have asked me. But the agreement was this: That I should act as trustee for both children during my life time, that I should manage the affairs of the Gary Real Estate Exchange during my life time, that I should do things that I thought in my judgment were to the betterment, that is to the financial betterment of the Gary Real Estate Exchange. I was to draw a salary from the Gary Real Estate Exchange in keeping with my own conscience and reasonable with whatever the Real Estate Exchange's earnings were. I was to vote the stock—in other words it was a pretty broad agreement. I would have extreme liberty to do with the Gary Real Estate Exchange as I thought best so long as it was my judgment that it was to the betterment ultimately of the Gary Real Estate Exchange. At my death, if I died prior to Mrs. McNair, she was to step in my shoes then and she at that time was to go ahead and to the best of her ability she was to administer, run, to do that which in your conscience was the best interest of the Gary Real Estate Exchange financially. She too would draw a salary commensurate with the earnings of income of the Gary Real Estate Exchange and *at her death then and in that event that this stock was to be accurately divided by our two children. Should she die prior to my death then in that event when I died that ended the trust, the children would then get this stock.*

Q. Now let's see—*as long as either you or she lived the stock was to be in trust for the children, and when the last one of you died it would then for the first time be transferred into their direct names?*

A. *Yes.*

Q. Is there more?

A. Yes. We talked about dividends and the possibility and probability of dividends. It was decided that if there were any dividends from the Gary Real Estate Exchange, the dividends would accrue from my, or her, management, so that by the same token if there were any dividends that accrued after both children were of age and we saw fit to give them to the children we could, if we didn't see fit to do it we could use our own discretion and judgment to reinvest the dividends which would still be under trust for the children.

Q. Did you and she agree as you have here stated to this jury?

A. Yes Sir.

Q. Have you to this very day held it under that very trust?

A. Yes sir, I have." (Emphasis added.)

The terms of the trust as originally recited by McNair, Sr. clearly do not include a power of revocation. The fact that a power to revoke was not included conflicted with any later statements by McNair, Sr. which were introduced to rebut the presumption of irrevocability.

■ Furthermore, McNair, Sr.'s subsequent statements were in themselves contradictory and self–serving. For example, in a 1965 deposition, McNair, Sr. testified the trust was still in existence and in 1959 he had requested McNair, Jr. to assign one–half of the beneficial interest to Norma. Yet in the 1969 deposition [6] he claimed the trust had been revoked in 1957, two years before the request for assignment and eight years before his 1965 deposition in which he stated the trust was still in existence. We also find it curious that McNair, Sr. requested an assignment at all if he indeed had reserved a power of revocation. We further note with respect to the 1969 deposition that McNair, Sr. appeared to have a failing memory and could not recall questions or his own answers given from one period to another during his deposition.

■ Hinds and Hamacher also point to a will executed in 1968 which distributed the trust assets without regard to the trust to support their contentions.[7] We acknowledge the evidence indicates McNair, Sr., in his later years, desired to revoke the trust and was disillusioned with his failure to reserve such power. But assuming, arguendo, that evidence of his change of heart, including among other things the execution of his will, established his alleged attempt to exercise a power of revocation, such evidence does not satisfy the rule requiring a showing of intention to reserve such a power *at the time of the creation of the trust.* IV *Scott, supra* at § 330.2. The presumption of irrevocability, here applicable in the absence of an express reservation of a power to revoke and arguably supported by the contradictory testimony of McNair, Sr. himself, requires us to affirm the trial court's judgment. The trust was therefore in existence at the time of McNair, Sr.'s death unless it terminated by operation of law.

II. *LAPSE*

■ Apart from the arguments on revocability and revocation, Hinds and Hamacher contend that Sonia's interest lapsed on her death in 1962 and by resulting trust the legal and beneficial interests in her share of the stock merged in McNair, Sr. and should have been included in his estate upon his death.[8] In his brief Hinds relies on the following italicized portion of Restatement (Second) of Trusts § 112(f) which in its entirety reads:

"A person who died prior to the creation of a trust can not be a beneficiary of the trust. Thus, if property is transferred inter vivos in trust for a named person who is dead, no trust is created. In such a case the transferree ordinarily holds upon a resulting trust for the transferor. *If a testator devises property in trust for a person who predeceases him, the devise of the beneficial interest lapses, and the person named as trustee ordinarily holds*

---

6. John Parramore, guardian of Virginia Parramore, filed a motion to suppress the 1969 deposition of Xen McNair, Sr., and to prohibit its use against Parramore because he had not been represented at the time McNair, Sr. was deposed. The July 22, 1975 order book entry reflected that the deposition has been admitted "conditionally" although the nature of the limitation was not specified. At the trial on the merits, the deposition was tendered as an exhibit at which time the court made the following ruling: "I'll admit it conditionally, reserving the right to the court to examine all of these exhibits with the thought [sic] that they may or may not subsequently be admitted over objection sustained to admission." The deposition was then read into the record. *Hinds and Hamacher confess the inability to find any specific ruling in the record on the deposition's limited admissibility*, but argue nevertheless that *if* the deposition was suppressed, the ruling was erroneous, an abuse of discretion and contrary to law. In the absence of a specific ruling in the record, the existence of such a ruling suppressing a deposition cannot be inferred and the failure to seek correction or modification of the record to reflect the alleged ruling results in waiver of the claimed error on appeal. *Chustak v. Northern Indiana Public Service Co.,* (1972) 259 Ind. 390, 288 N.E.2d 149; *Richmond Gas Corp. v. Reeves,* (1973) 158 Ind.App. 338, 302 N.E.2d 795.

7. We note Hinds and Hamacher do not direct our attention to any testimony in the record indicating the intention to reserve or exercise a power of revocation by Esther McNair, the co–settlor of the trust.

8. By terms of the divorce of McNair, Sr. and Esther granted in 1948, Esther relinquished to McNair, Sr. all claim to any shares of stock which here constitute the trust res.

*the property upon a resulting trust for the estate of the testator."* (Emphasis added.)

*Id.* First it is apparent Hinds ignores the fact that since a *will* gives no present interest and does not become operative until the death of the testator, *Farmers and Merchants State Bank v. Feltis,* (1971) 150 Ind. App. 284, 276 N.E.2d 204, a beneficiary who predeceases the testator dies *prior to the creation of the trust.* Under such circumstances the proposition espoused in § 112(f) of the Restatement indicates that a person who has died *prior to the creation of a trust* can not be a beneficiary of such trust. *Contra,* Annot., 118 A.L.R. 559 (1939) (cases applying will anti–lapse statutes to testamentary trusts).

Next, of course, we are not confronted in the case at bar with a testamentary trust. The trust here was an inter vivos one, not a testamentary disposition as contemplated by the underscored portion of § 112(f) *supra,* and was created with rights vesting prior to Sonia's death. Nor is the other language of § 112(f) which discusses inter vivos trusts applicable, inasmuch as it only concluded: "If property is transferred inter vivos in trust for a named person who is dead, no trust is created." *Id.* Sonia was not dead at the time of the transfer of the stock in trust. We therefore conclude § 112(f) of the Restatement is not applicable to the case at bar.

Furthermore, in regard to the nature of the rights conferred to Sonia (and McNair, Jr.), we are first cognizant that the 1955 *Hinds v. McNair* decision established and the 1972 *Hinds v. McNair* decision reaffirmed McNair, Sr. and his wife created a trust in 1931 and McNair, Sr. held the stock in trust for his two children. McNair, Sr. originally testified that at the death of the survivor of he and his wife "(t)he stock was to be divided equally between Sonia and Xen, Jr., [sic] McNair." Hence it appears, under the facts presented, we are dealing with individual gifts[9] in trust with a beneficial interest vesting in Sonia and McNair, Jr. at the time McNair, Sr. transferred the stock.

The nature of a beneficiary's interest in a trust has been addressed in prior Indiana cases. In *Trusteeship of Creech v. Russellville Bank,* (1960) 130 Ind.App. 611, 159 N.E.2d 291, the vested rights in a testamentary trust of both the first beneficiary and the remainder beneficiary were defined. In that case the trust provided for a life estate in the testatrix's niece, Anna Creech, for her support and with a discretionary power in the trustee to exhaust the trust corpus and income in favor of the life beneficiary. In the event assets remained in trust upon the death of the life beneficiary, the remainder of the assets were devised to Wheeler Creech, the life beneficiary's son. Although both the life beneficiary and the remainder beneficiary survived the testatrix, the remainder beneficiary predeceased the life beneficiary. However, during Wheeler Creech's lifetime he assigned his remainder interest in the trust assets to his brother Brevator Creech. After the life beneficiary's death and upon the claim of the testatrix's heirs to the remaining trust assets, the trustee brought an action for a construction of the trust provisions. The testatrix's heirs first contended that the remainder beneficiary did not acquire a vested interest inasmuch as he predeceased the life beneficiary and, second, that the assignment was illegal and void since the power of the trustee to distribute all of the trust assets to the life beneficiary might well have left nothing to distribute to the remainder beneficiary. In rejecting these contentions, the Court concluded:

"The amount, if any, that Wheeler Creech [the remainder beneficiary] might receive out of the trust *and the time he might receive it was contingent and un-*

---

**9.** McNair, Jr. alleges the gifts were to a class, and therefore he was entitled to Sonia's share after her death. We need not address this issue since the distribution of the trust assets is governed by the compromise and settlement agreement discussed *infra.* Whether the gift was to a class or to named individuals is not necessary to determine here since under either construction the estate was not entitled to Sonia's share of the trust res.

*certain but his right to receive it was not.* It was fixed and vested and was a property right and therefore he could sell, devise, assign or dispose of this right to whomever he pleased and for any consideration that he chose."

His possession or enjoyment of the interest might be postponed, delayed or never come to pass but his right to it, if it did ever materialize, was as sure and certain as anything in law. *Heilman v. Heilman,* supra [(1891), 129 Ind. 59, 28 N.E. 310]; *Summers v. Old–First National Bank & Trust Company of Fort Wayne,* as trustee under the Last Will of Catherine Summers, 1938, 105 Ind.App. 9, 13 N.E.2d 320; see also §§ 157, 162, 163 Property (Future Interests) Restatement of the Law." (Emphasis in original.)

. . . . .

"A vested interest under a trust is established by the same general principles as apply to the common–law life estate. The character of the corpus, real, personal, tangible, or intangible, is immaterial. The use of a trustee as a method of conveyance does not affect the rule regulating the time of the vesting of the estate in the remainder beneficiary. The preference of the law for an early vesting would govern. When property is delivered over to a trustee, whether by virtue of a trust agreement or a testamentary devise, the trustee takes the *legal title* to the property and the cestui que trust or beneficiary takes the *equitable* title. Both have a property interest recognized by law. Where the trust provides that the trustee shall hold and manage the property and pay the income derived therefrom and a part or all of the corpus in its discretion to one beneficiary upon the death of the first beneficiary, both the first beneficiary and the remainder beneficiary, upon the activation of the trust, acquire an interest and one that can be assigned by either beneficiary. *Richardson, et al. v. Chastain, et al.,* 1953, 123 Ind.App. 444, 111 N.E.2d 831; see also sec. 163 Restatement of the Law, Property (Future Interests)." (Emphasis in original.)

*Id.* 130 Ind.App. at 619–20, 159 N.E.2d at 295–96. *See also Bailey v. Bailey,* (1967) 142 Ind.App. 119, 232 N.E.2d 372; *Snouffer v. Peoples Trust & Savings Co.,* (1966) 140 Ind.App. 491, 212 N.E.2d 165. Thus in *Trusteeship of Creech,* although delivery of the remaining assets was postponed until the death of the life beneficiary and was contingent upon the discretion of the trustee by virtue of his right to exhaust the trust in favor of the life beneficiary, yet the deceased remainder beneficiary had achieved an interest at the time of the trust's creation. Therefore his interest did not lapse but his heirs or assigns were entitled to the trust corpus. A similar situation is presented in the case at bar. Sonia's interest was fixed and vested upon the creation of the trust and was descendible to her heirs. *Trusteeship of Creech v. Russellville Bank, supra* ; 28 I.L.E. *Trusts* §§ 101–02 (1960).

Our holding is supported by decisions in other jurisdictions. The Michigan Court of Appeals was recently confronted with a similar situation in *Detroit Bank & Trust Co. v. Grout,* (1980) 95 Mich.App. 253, 289 N.W.2d 898. In that case, the settlor created an inter vivos trust subject only to a power or revocation and with the corpus payable upon the settlor's death. One twelfth of the corpus was payable to Selden Daume, who later predeceased the settlor. After the settlor's death both the settlor's and Daume's heirs claimed entitlement to Daume's portion of the trust corpus. In upholding the rights of Daume's heirs, the court recognized it was dealing with an inter vivos rather than a testamentary trust and discussed the fact that under Michigan law (as in Indiana) no present interest in property is created by the mere execution of a will; therefore the interest of the trust beneficiary who predeceases the testator lapses and reverts to the testator's estate. However, in the case before it, Daume was the beneficiary of an inter vivos trust, alive at the time it was created. The court concluded that Daume achieved a vested interest at the time of the trust's creation. The interest did not lapse when he later prede-

ceased the settlor and consequently his heirs were entitled to his share.

Similarly, in *First National Bank of Cincinnati v. Tenney*, (1956) 165 Ohio St. 513, 60 Ohio Op. 481, 138 N.E.2d 15, an inter vivos trust provided for the payment of the net income to the settlor during her life and required distribution of the remaining assets to the settlor's sister after the settlor's death. The settlor also reserved the power to modify or revoke the trust during her lifetime. When the beneficiary predeceased the settlor the trustee sought instructions from the court regarding the distribution of the trust assets since no alternate beneficiary had been named. The Ohio court, in noting the obvious distinction between a remainder under a will and one under an inter vivos trust stated:

"The distinction between a remainder such as the one involved here and one created by will is obvious. A will speaks from the date of death of the testator. *Judy v. Trollinger*, 110 Ohio St. 576, 583, 144 N.E. 44, 46. But a trust speaks from the date of its creation. *Trowbridge v. First Stamford Nat. Bank & Trust Co.*, 182 Misc. 180, 44 N.Y.S.2d 43, affirmed *Trowbridge v. Trowbridge*, 294 N.Y. 785, 62 N.E.2d 232.

From the very nature of an *inter vivos* trust it must so speak. In order for a trust to be a trust, the legal title of the res must immediately pass to the trustee, and the beneficial or equitable interest to the beneficiaries. It has been said many times that the radical idea of a trust is the coexistence of the legal title and the equitable interest, and that perfect ownership is decomposed into its constituent elements of legal title and beneficial interest, which are vested in different persons at the same time."

*Id.* 165 Ohio St. at 518, 60 Ohio Op. at 483–84, 138 N.E.2d at 18–19. Thus the

court concluded that the named beneficiary took a vested interest subject only to defeasance by the exercise of the reserved power of revocation and, although the beneficiary's heirs took subject to the same power of revocation, upon the settlor's death the heirs' interest became indefeasible. *Accord, Randall v. Bank of American National Trust & Savings Ass'n*, (1941) 48 Cal. App.2d 249, 119 P.2d 754.[10]

By the reasoning of the foregoing persuasive authorities, we conclude here under the terms of the trust McNair, Sr. reserved the right to manage the assets and to distribute the income of the trust within his discretion as Trustee. Sonia took a vested interest in the trust assets which were payable at the time of the settlor's death. Sonia's future vested interest descended to her heirs upon her death, and when McNair, Sr. died her heirs' interest in the trust assets became absolute.

### III. TERMINATION

Hamacher and Hinds additionally seek either to construe the terms of the trust as conditioning Sonia's interest in the trust res on her survival of McNair, Sr., or to terminate the trust for failure of purpose, thereby gaining at least a portion of the trust assets for the estate. We feel both arguments, however, require the imposition of terms which supplement or contradict the intention of the settlors.

In discussing each of these issues, we are cognizant of the following general rules governing construction of the terms of a trust which caution that the settlor's intention is controlling unless it is in violation of some positive rule of law or against public policy, Ind.Code 30–4–1–3; *Powell v. Madison Safe Deposit & Trust Co.*, (1935) 208 Ind. 432, 196 N.E. 324; *Hauck v. Second National Bank of Richmond*, (1972) 153 Ind.App. 245, 286 N.E.2d 852; *Sellers v. Milford*, (1935) 101 Ind.App.

---

10. *See also Estate of Button v. Old National Bank of Washington*, (1971) 79 Wash.2d 849, 490 P.2d 731. This was an action involving an inter vivos trust where the settlor reserved a life estate in himself and subsequently, the remainder beneficiary predeceased him. The Washington Supreme Court upheld the interest of the heirs of the deceased beneficiary applying the terms of their anti-lapse statute and reasoning that such statute declared the policy of the state to be the protection of the lineal descendants of a deceased beneficiary. The court considered a gift in trust as having the practical effect of a legacy.

590, 198 N.E. 456, and further that the settlor's intention must be determined by reference to the terms of the trust, utilizing the rules controlling the construction of wills if necessary, *Warner v. Keiser*, (1931) 93 Ind.App. 547, 177 N.E. 369, so as to render the trust operative and effective. *Crawfordsville Trust Co. v. Elston Bank & Trust Co.*, (1940) 216 Ind. 596, 25 N.E.2d 626; *Hauck v. Second National Bank of Richmond, supra.*

Guided by these basic rules we turn to the contention that the original terms of the trust should be interpreted to require the conditioning of Sonia's interest upon her survival of McNair, Sr. The typical approach for analyzing this issue, consistent with the rules of construction presented above, has been stated as follows:

"Where a future interest under a trust is given to a beneficiary, and the beneficiary dies before the time fixed for the enjoyment of this interest, the question arises whether his interest ceases, or whether it passes on his death under his will or by intestate succession. *The answer depends on whether on a proper construction of the terms of the trust the beneficiary's interest was conditional upon his survival.* It is immaterial whether the condition, if any, is a condition precedent or a condition subsequent, it is immaterial whether the interest of the beneficiary is contingent on his survival, or whether it is vested but subject to be divested if he should not survive. In any case if his interest is conditional on his survival, it ceases on his death. If, on the other hand, his interest is not conditional on his survival, it passes on his death under his will or by intestacy. *The question is one of construction.* As the problem is one which arises frequently, the courts have worked out certain rules of construction, which are applied where on the face of the instrument it is not clear whether the interest of the beneficiary is or is not conditional on his survival. *Since these rules are applicable whether property is given directly to a beneficiary or whether a trust is created, they are ordinarily dealt with in treatises on property or in treatises on wills."* (Emphasis added.)

II *Scott, supra*, § 128.8 at 1046. The rules of construction employed in analyzing devises and conveyances are therefore also applicable to gifts in trust.

There are two primary methods utilized to determine whether a condition of survival exists.[11] The first method employs an examination of factors which tend to establish a condition of survival from the express language used in the terms of the gift. These factors are: 1) the use of a descriptive term connoting survival such as "heirs" or "next of kin;" Restatement of Property § 249 (1940); R. Powell & P. Rohan, 2A *Powell on Real Property* § 327 (1977); 2) an added word or phrase which describes the intended takers as those surviving to a later date, such as "to the surviving children," or "if living," Restatement of Property § 250; 2A *Powell on Real Property* § 328; 3) an alternative limitation employing the word "or" such as "to B or his children," Restatement of Property § 252; 2A *Powell on Real Property* § 329;

11. We are aware the authorities cited herein apparently contemplate an examination of the specific terms of a *written* instrument. We note, however, that these rules controlling the construction of a conveyance's terms were designed to aid a court in determining the settlor's intention—the court's ultimate goal in actions for judicial construction of both written and parol trusts. We see no reason to conclude the written trust rules should not be enlisted as aids in construing the meaning of the terms of a parol trust, especially where, as here, such terms were defined in the deceased settlor's memorialized testimony, which in-court statements were designed to articulate "each and every term" of the trust. Such a situation is readily distinguishable from a general informal oral agreement. Thus once the terms of the oral agreement are established by probative evidence, we consider it the obligation of the trier of fact to utilize standard and applicable rules of construction in determining the intent of the settlor. As discussed *supra*, an application of the rules of construction reveal a total lack of any indication that McNair, Sr. intended to condition Sonia's interest on her survival, and Hinds and Hamacher have failed to introduce any evidence necessitating a conclusion to the contrary.

or 4) a supplanting limitation containing an original gift and a secondary gift separated by words such as "but it" or "in case," as in "remainder to B's children, but if any child of B predeceases B, then to . . . ;" Restatement of Property § 254; 2A *Powell on Real Property* § 330.

Even a cursory examination of the terms of the trust as expressed by McNair, Sr. do not reveal any descriptive term which might positively impose a condition for survival. Nor do appellants suggest the .existence of such positive language. We therefore examine those factors which tend to establish the *absence* of a requirement of survival.

This second method employs an examination of negative factors which hinder or prevent the finding of a requirement of survival. As outlined in 2A *Powell on Real Property* :[12]

> "The factors which tend to establish the absence of a requirement of survival cannot be as easily organized, however, because courts very often rest their failure to find a requirement of survival on the combined forces of several 'negative' factors. The most important of these are
>
> (1) the absence of both an alternative and a supplanting limitation;
> (2) identification of the intended takers;
> (3) language of present gift; and
> (4) the gift to the future interest holder himself of the *income* from the subject matter of the gift for the period during which possession is denied to him.
>
> These factors are hereafter discussed separately but it should be kept in mind that the persuasive value of each factor increases as it joins forces with another. The factors themselves vary considerably in persuasive force. Furthermore, these factors are weakened and often overcome by the presence of the positive factors discussed in ¶¶ 327–330. In the scrutiny of any given limitation, all these possible

factors influencing the presence or absence of a requirement of survival must be considered and weighed. So far as the negative factors are concerned, the discovery of any one factor does not automatically provide an answer. The presence of each negative factor exerts a constructional pull favorable to the finding of no requirement for survival which must be overcome by countervailing factors in order not to decide the case." (Emphasis added.)

*Id.* at § 331, 779–80. *Accord*, Restatement of Property §§ 225–59.

▪▪▪ Applying the factors outlined above, we first conclude that the absence of any limiting language by McNair, Sr. implies the absence of a condition that Sonia survive his death. For example, McNair, Sr. failed to provide an alternative disposition for the assets if either beneficiary predeceased the settlors. *See* Restatement of Property, § 255; 2A *Powell on Real Property* § 331 at 780–82. Next, he specifically identified existing persons, Sonia and McNair, Jr., as the intended takers, removing uncertainty and facilitating implementation of the constructional preference for early vesting rather than postponing vesting until a future date. *See* Restatement of Property § 256; 2A *Powell on Real Property*, § 331 at 782–83. McNair, Sr. also used language indicating a present gift by directing at the death of the settlor, "*then and in that event*" his children would "get this stock." As explained in 2A *Powell on Real Property*, § 331 at 783: "[t]he adverb of time ["then" or "upon"] used with respect to the end of the prior interest is normally construed to connote temporal sequence and not a requirement of survival." *Accord*, Restatement of Property § 257. Finally, McNair, Sr. made a gift to Sonia of the income from the trust res for the same period during which possession was denied, although the distribution of this income was discretionary during the trustee's life. *See* Restatement of Property § 258; 2A *Powell*

---

**12.** The rules of construction referred to in Powell's treatise on real property apply equally to limitations of land and personalty as well as to limitations creating legal or equitable interests. 2A *Powell on Real Property, supra*, § 326 at 758.

on *Real Property* § 332. *See also* Restatement of Property § 243 at comment e. Under the authorities cited, the clear aggregate effect of the above evidence strongly indicates the absence of any intent to include a condition of survival, and consequently supports the court's finding in this regard.[13]

■ We find further support for our rejection of the contention that the trust terms required Sonia's survival by analysis of the alternative contention that the trust terminated because its purpose was "no longer capable of being served," and "became impossible of fulfillment." It is mere speculation on appellants' part that the trust's purpose was to "raise two fine children ... to provide for their well being ... to achieve domestic harmony and insure [sic] a happy and lasting marriage." The trust's purpose is governed by the intention of the settlors as determined from the terms of the trust. *Hauck v. Second National Bank of Richmond, supra*, 153 Ind. App. at 259, 286 N.E.2d at 861. The settlors' manifest purpose was to set aside the stock in Gary Real Estate Exchange, Inc., for the ultimate benefit of Sonia and McNair, Jr. while the settlors retained their lifetime power to manage those assets. As stated by McNair, Sr. in his original testimony, the sole articulated goal of the trust was to "provide something that ultimately they [the two children] would have." Moreover, McNair, Sr. and his wife Esther provided for termination of the trust only upon their death. Furthermore, from the facts of this case, it is clear that at the time of the trust's creation the settlors made the decision to convey the stock without condition. Although numerous options were available for imposing restrictions, none were exercised by the settlors. Neither the trial court nor this Court can supplement or contradict the settlors' express intention based on conjecture now advanced by Hinds and Hamacher as to the trust's purpose. The courts should not carry the burden of speculation as to which of many possible purposes underlie the creation of a trust, nor should they be required to accept a particular purpose adopted by a personal representative after the settlor's death.[14] We find no error in the trial court's decision that the trust did not terminate before McNair, Sr.'s death.[15]

---

**13.** Hamacher also argues that Sonia's interest was at least vested subject to defeasance if she predeceased McNair, Sr. This contention is based on the latter's 1969 deposed testimony that the trust was *revocable* if one of the participants died. Such a provision, if it did exist, is vitally different from one which conclusively directs divestiture upon the happening of a condition subsequent. *See e.g., Loeb v. Loeb*, (1973) 261 Ind. 193, 301 N.E.2d 349. If such a condition did exist, it was a condition precedent to the exercise of the alleged power of revocation and not a condition for lapse by operation of law. But since the trial court held, and we agree, McNair, Sr. did not reserve a power of revocation and did not revoke the trust, the disposition of Sonia's interest if the trust had been revoked is a moot question.

**14.** Nor is there any indication of a condition that Sonia reach the age of majority, as suggested by appellants, and even if such a condition existed, it would not necessarily amount to a condition of survival resulting in lapse:

"There is another class of cases in which it is held that a provision with respect to the age of a legatee does not impose a condition of survival but merely postpones the enjoyment of the legacy by the legatee until he reached the designated age. We have seen that it is ordinarily held that there is a condition of survival where the gift is to A at twenty–one or when he reaches twenty–one. Where there is a gift to A to be paid at twenty–one, however, it is held that there is no condition of survival but is a mere postponement of enjoyment. In this case there is an absolute gift followed by a provision as to the time of payment. If the *legatee dies before reaching the designated age, his right to the legacy will pass to his personal representatives.*" II *Scott, supra*, § 128.8 at 1047. (emphasis added).

**15.** Our conclusion conforms to the general rule that the courts have no power, with few exceptions, to dissolve a trust before the terms for which it was created. *Apple v. Apple*, (1971) 149 Ind.App. 529, 274 N.E.2d 402; *Gibson v. Gibson*, (1952) 122 Ind.App. 559, 106 N.E.2d 102; 28 I.L.E. *Trusts* § 4 (1960); 89 C.J.S. *Trusts* § 93c (1955). These few exceptions have been codified under Ind.Code 30–4–3–24(a) which provides:

"On petition by a trustee or beneficiary, the court may, in its discretion, terminate the trust:

## IV. ALLEGATION OF FRAUD

In their counteraction, Hinds and Hamacher allege the settlement agreement was a fraud designed to prevent them from recovering on the judgment. The trial court found "no evidence of probative value" to support the allegation, which finding is challenged as erroneous and contrary to law.

During the trial, evidence was presented showing Norma's participation in the settlement, which was a matter of record. Norma's competing interests as Executrix of McNair, Sr.'s estate and assignee of one–half of McNair, Jr.'s interest in the trust res was thus apparent, and it is this situation which Hinds and Hamacher contend compels the finding of fraud.

We disagree. Fraud may be defined as comprising all acts, omissions and concealments involving a breach of legal or equitable duty which results in damage to another. *Daly v. Showers*, (1937) 104 Ind.App. 480, 8 N.E.2d 139; 14 I.L.E. *Fraud* § 1 (1959). Although we acknowledge Norma's dual role was an apparent conflict of interest before remand, we first note such conflict was not clandestine. In fact, the 1972 *Hinds v. McNair* reversal was based on Norma's inadequate representation of the estate given her competing interest as evidenced by the settlement agreement. *Hinds v. McNair*, 153 Ind.App. at 483, 287 N.E.2d at 773. Furthermore, we fail to see nor have appellants indicated how the execution of the settlement agreement damaged or prejudiced their asserted claims in this litigation,[16] since the agreement was effective only upon court approval and *after* a determination on the merits of arguments presented by Hinds and Hamacher. Finally, there is no suggestion of fabrica-

tion or misrepresentation of significant evidence. The judgment of the trial court hinged solely on matters of record, including primarily statements of McNair, Sr. himself. In conclusion we can find no evidence of error in the trial court's finding of a lack of probative evidence on the allegation of fraud.

## V. DISMISSAL OF McNAIR, JR.'S ORIGINAL ACTION

Hinds and Hamacher also advance several arguments to support an allegation of error in the trial court's granting of McNair, Jr.'s motion to dismiss his original action without prejudice, which they generally contend was improper as against them since they did not join in the dismissal. Specifically, Hinds appears to complain of an alleged failure of the trial court to properly preserve the assets of the estate pending final judgment. In his brief, Hinds argues:

"If the trial court was going to allow Xen McNair, Jr. to dismiss his action, it should have done so only conditioned upon the return of the litigation to the status quo as it existed at the filing of Xen McNair, Jr.'s Second Amended Complaint. The status quo would have entailed the returning of the stock of The Gary Real Estate Exchange, Inc. or its proceeds, to the Estate of Xen McNair, Sr. where it rested at the time of his death."

Hamacher raises a similar objection. Their arguments refer to the transfer of the trust assets to the Gary National Bank as Trustee after the 1970 trial court judgment, which was later reversed, upholding the continued existence of the trust and ordering distribution of the assets according to

---

(1) if the purpose of the trust has been fulfilled or has become illegal or impossible for fulfilment; or
(2) if owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purpose of the trust."
*Id.*

**16.** In this regard we also note that compromise and settlement agreements between family members are encouraged in the law as an amicable form for settlement disputes. *Apple v. Apple*, (1971) 149 Ind.App. 529, 274 N.E.2d 402. Norma's participation in the agreement obviated litigation on her claim to a portion of the trust res by virtue of an alleged assignment from her step–son, McNair, Jr.

the terms of the settlement agreement.[17] Before remand by this Court in 1972, $250,000 of the assets were so distributed but in view of the pending appeal approximately $200,000 was retained in trust to satisfy Hinds' judgment in the event of his ultimate success in the litigation. After remand the trial court ordered an accounting of the funds remaining and suspended further distribution under the agreement until final judgment, but did not order the return of the monies previously distributed. We note that the question so presented by Hinds and Hamacher is moot since the trial court ruled, and we affirm, that neither Hinds nor Hamacher were entitled to any of the trust assets. Furthermore, Hinds and Hamacher fail to demonstrate how their legal rights were prejudiced by the dismissal of McNair, Jr.'s action for accounting, distribution and damages caused by mismanagement. In addition to responding to McNair, Jr.'s complaint, Hinds and Hamacher brought counterclaims denying a trust ever existed and asserting the existence of a resulting trust which arose upon the alleged failure of the trust due to revocation, lapse, or termination for failure of purpose. They also requested the imposition of a constructive trust in their favor based on an allegation of fraud among the parties to the settlement agreement under which a portion of the assets had been distributed. The trial court specifically preserved their right to prove the existence of a resulting or constructive trust by retaining jurisdiction over these counterclaims pursuant to Ind.Rules of Procedure, Trial Rule 41(A)(2).[18] Neither Hinds nor Hamacher indicate any instance where their evidence was excluded. Hence

we conclude they did not lose any substantial rights by the dismissal.

## VI. *PARTIAL SUMMARY JUDGMENT*

On the morning of trial, the court made a ruling from the bench granting a motion filed by Parramore which requested partial summary judgment on the single issue of whether a trust existed in 1955. It is apparent the trial court's ruling accepted the Supreme Court decision as res judicata on the existence of a trust in 1955 and therefore necessarily concluded the trust had not been revoked at the time of the Supreme Court ruling. With regard to this partial summary judgment, Hinds and Hamacher claim additional statements made from the bench establish the judge's predetermination of the revocation issue and thereby conclude they were denied a meaningful factual determination. They further claim the granting of partial summary judgment was contrary to law in that the 1955 *Hinds v. McNair* decision was not res judicata on the trust's existence. In order to understand the questions presented, we quote that portion of the record in which counsel submitted the issues to the court:

> "*MR. HOLCOMB* [attorney for Parramore]: One other preliminary matter. I filed on behalf of John Parramore a Motion for Summary Judgment which we had a pre-trial conference and continuation, but on the 15th the court ruled at that time on the issue of whether there was or was not a trust, and that's what the Motion for Summary Judgment went to. *We asked that you establish, in accordance with the Supreme Court and Appellate Court decisions[,] in 1955, that*

17. Our conclusion on this issue also disposes of an argument made by Hamacher that the court's refusal to declare the settlement agreement void was error. She acknowledges in her brief that her motion in this regard was "for the purpose of returning the res in this litigation to the jurisdiction of the trial court"–an argument which parallels her objection to the granting of dismissal.

18. T.R. 41(A)(2) states:
"By order of court. Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plain-

tiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim or cross-claim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim or cross-claim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

there was a trust. You already ruled on that, and for the purposes of the record, there is no need to rule further on it. I don't know whether I should withdraw or let it sit there, but the court already ruled on that issue.

COURT: Do you want me to formally move for the granting of the Summary Judgment for Parramore, *on that particular issue?*

MR. HOLCOMB: *On that particular issue that there was a trust created by Xen McNair, Sr. as of '55 case. As I understand, that was the ruling already, and that was the only issue.*

COURT: There was a finding, but there was no judgment made.

MR. NESBITT [attorney for McNair, Jr.]: We filed Summary Judgment and court made preliminary ruling and later withdrew. *We would like on that one issue only as to Xen McNair, Jr. for the court to also enter order at this time that there was a trust established in earlier days, whatever the date.*

MR. McTURNAN [attorney for Hinds]: As attorney for intervenor let the record show that we object. We object to that ruling and object further for Summary Judgment in this case. We feel that [the] Appellate Court reversed itself apparently for some reason. The Appellate Court reversed for some reason and sent it back for trial. It appears we're headed right down the same direction we were headed in Starke Circuit Court, piece by piece, summary judgment, summary judgment, summary judgment until there is no issue left. We appealed and it was reversed. There aren't too many things left to say by summary judgment.

LEON KAMINSKI [attorney for Hinds]: May I react. We have res judicata that applies in one case and doesn't in the other. All I have got to say is I'm not as familiar with this litigation as others, but I would like to have the court realize and adopt the position also that the case is decided in 387 N.E.2d is res judicata and that case the court made it clear that one of the issues to litigate is—what the Court said is:

'The above case law may be inapplicable where the intervenor's interest has not been adequately represented.'

and the court found that, in fact, there was no representation and that is res judicata, too.

COURT: In the case that the Supreme Court decided in '55, the Supreme Court stated that there was a trust created, and Judge Hoffman, I think in [the] '72 decision, stated the fact [the] Supreme Court in '55 stated that a trust had been created.

 · · · · ·

If the Supreme Court in '55 decided that in it's decision a trust had been created and [the] matter was res judicata and persons present now stand in privy with those that existed at the time they decided the case in '55, John Parramore's Motion for Summary Judgment should be sustained so far as John Parramore is concerned.

Now with respect to Xen McNair, Jr., *these questions still remain open as to whether or not since '55 [the] trust had been revoked. Question of revocation comes up since 1955.*

MR. SUAREZ [attorney for Uzelac]: Milan Uzelac is in the same position as John Parramore and would ask the court permission to join in the Motion for Summary Judgment with Mr. Holcomb for Parramore. Our positions are the same and we would ask leave of court to join in that Motion.

COURT: I don't know.

MR. COHEN [attorney for Norma]: May I say, I believe the court has stated as to the question of the existence of the trust correctly. As I understand, Mr. Holcomb's Motion for Summary Judgment, that *all Mr. Holcomb asks for is summary judgment on the question of the existence of the trust, and the defendant, Norma McNair, joins in that motion also.* The court already found that by its rule on July 15th, that the trust was in existence as of the date of decision in *Hinds v. McNair* in '55. *The court has, in fact,*

*granted summary judgment on the issue of the existence of the trust and we would ask the court formally to so rule. That leaves then the only remaining issue, the question of revocability which is a two–fold question: (a) Whether trust was revocable; and (b) if the court should conclude that the trust was revocable have the intervenor and administratrix adduce sufficient evidence to establish that it was, in fact, revoked. So, I believe at this stage the intervenor and administratrix have the right to submit to the court whatever argument in way of legal authority to the first question, whether the trust was revocable. If the court concludes that the trust was, they should also in conjunction with that have the opportunity to submit any evidence, if they have any, that the trust was revocable or was, in fact, revoked. And then the question of lapse which is also before the court is purely a legal question, as I perceive the cause at this point. Then there is only remaining the issue of revocability on which to adduce evidence, and I think that is what we should proceed with at this time.*

COURT: On the day you were in court, July 15th, the order I made at that time, I indicated that there was a finding that a trust was created, and that the trust was on that date, the trust as created, irrevocable. So I merely made a finding. So at this particular time it will be the judgment of this court that on the date of the Supreme Court ruling, which is res judicata, the Supreme Court found, and it's binding, that a trust was created. It's the judgment of this court as of this date a judgment trust is created and that trust is irrevocable, having based this upon the law that there has been no showing to the court at this time that at the time the trust was created in 1931, or that date, there was any revocation [sic] on the part of Xen McNair, Sr. to revoke the trust, *and that doesn't mean the question of revocation cannot come up from 1955 on.*

MR. COHEN: That's the way we see it, Your Honor.

MR. McTURNAN: Do I understand the court's ruling to be that—

COURT: Let me finish. Insofar as John Parramore is concerned that *the summary judgment on the question of the existence of the trust and on the question of the revocation of the trust is granted.* And that applies to these other parties on the question of the trust.

MR. HOLCOMB: Just on the question of the trust?

COURT: Yes.

MR. LUCAS [attorney for Parramore]: It would apply, in my opinion, without any question, Your Honor, as concerning Milan Uzelac whose rights flow from the same source as Parramore.

COURT: That would apply to Uzelac.

MR. NESBITT: We also believe it would apply on the same basis as to Xen McNair, Jr. *as to the existence* of the trust here, because his rights go the same as other beneficiaries.

COURT: All right. Where do we go from here?

MR. NESBITT: May I just say a word. I have been fighting this thing for thirteen years now, and I do not think at this time then, as we understand the court's ruling, they now have the opportunity to go forward with the evidence, if they can, to show evidence of revocation?

COURT: Right.

MR. NESBITT: By agreement of beneficiaries, that's our position in this case.

MR. McTURNAN: I understand by judgment of the court, Your Honor?

MR. NESBITT: Wait until I finish speaking. Our position is that they now have the right to go forward with any evidence they have on revocation of the trust from the ruling of the Supreme Court case?

COURT: That's right—1955.

MR. NESBITT: Subject to objection we may have to revocability or inadmissibility?

COURT: Yes. Mr. Hamacher, do you want time to get your stuff together? (Emphasis added.)

Following this colloquy, Hinds and Hamacher presented their evidence.

■ We believe the question before us is essentially whether the trial court held either 1) that the trust as created by the settlors did not include a power to revoke and, therefore, the power not existing, no evidence was admissible to show revocation, or 2) merely that the settlors had not exercised a power of revocation as of 1955 and, thus, evidence was proper as to the question of whether the power to revoke was included within the terms of the trust and whether such power was exercised during the lifetimes of the settlors. We think it is apparent from the proceedings that the court reached the latter conclusion.

First, we again note the motion for summary judgment asked only for a ruling on the existence of the trust as of 1955, a fact which was acknowledged repeatedly by counsel in presenting the issue to the court, as indicated by the underscored passages. Secondly, the court stated from the bench that the question of revocation from 1955 on was an issue in the cause, a situation which would have been precluded had the court already determined that no power to revoke had been reserved by the settlors. Neither Hinds nor Hamacher suggest or call our attention to any instance where the court excluded evidence pertaining to revocation. Finally, and significantly, after hearing all the evidence the court made a finding that the "settlors reserve no power of revocation," a wholly unnecessary finding had the issue been disposed of by summary judgment.[19] Based on the above, we believe the record is clear that the trial court did not predetermine the issue of whether the settlors had retained a power to revoke and no prejudice in this regard has been shown.

With regard to the court's partial summary judgment ruling, Hinds and Hamacher also maintain that neither the 1955 nor the 1972 decisions established the creation and existence of a valid trust. We disagree. The trial court's ruling was correct since it is apparent the 1972 *Hinds v. McNair* decision was law of the case.

■ Law of the case designates the doctrine that an appellate court's determination on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal given the same case and substantially the same facts. *Fair Share Organization v. Mitnick*, (1964) 245 Ind. 324, 198 N.E.2d 765, *cert. denied* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48; *Egbert v. Egbert*, (1956) 235 Ind. 405, 132 N.E.2d 910; 5 Am.Jur.2d, *Appeal and Error*, § 748 (1962); 2 I.L.E., *Appeals*, § 478 (1957). Hinds and Hamacher contend law of the case applies only to issues necessarily decided on appeal and therefore applies only to the intervention issue. However, the rule holds prior appellate decisions conclusive on all questions which have been actually considered and determined in the first appeal. *Egbert v. Egbert*, (1956) 235 Ind. 405, 132 N.E.2d 910; *Alerding v. Allison*, (1908) 170 Ind. 252, 83 N.E. 1006; *Wm.*

---

**19.** Admittedly, the following statement by the court, contained in the passage quoted *supra*, includes confusing references to various dates:

"It's the judgment of this court as of *this* date a judgment trust is created *and that trust is irrevocable*, having based this upon the law that there has been no showing to the court *at this time* that at the time the trust was created in 1931, *or that date*, there was any revocation [sic] on the part of Xen McNair, Sr. to revoke the trust and *that doesn't mean the question of revocation cannot come up from 1955 on*." (Emphasis added.)

The language of the court was unfortunate in its lack of clarity. If severed from the surrounding portions of the record, the above passage might create an inference of predetermination on the issue of revocability. When viewed in context, however, it is apparent the court left the issues of revocability and revocation for trial.

Careful compliance with Ind.Rules of Procedure, Trial Rule 56(D) might have avoided the confusion. If practicable, upon granting partial summary judgment the better practice as suggested by the trial rule is for the court to enter a written order specifying the matters disposed of and designating the issues remaining for litigation. While the trial court's ruling in the instant case does not precisely comply with these requirements, substantial compliance was accomplished by entering partial summary judgment on the issue of the trust's existence, and by specifying the question of revocation after 1955 remained to be litigated. The decision on the issues of revocation and revocability were made upon the merits as discussed earlier in this opinion.

*J. and M. S. Vesey, Inc. v. Hillman*, (1972) 151 Ind.App. 388, 280 N.E.2d 88. As indicated in the 1972 opinion, the Court was presented with three questions for determination: (1) whether Hinds' motion to correct errors was timely filed; (2) whether the parties to the appeal were bound by the 1955 *Hinds and McNair* decision of the Supreme Court; and (3) whether Hinds should be allowed to intervene. In resolving the second issue, this Court scrutinized the findings of the Supreme Court and ruled that a careful reading of that case could "reasonably lead only to the conclusion that Xen McNair, Sr. held the property in question as Trustee," and concluded:

"In the instant case, the existence of a trust has been determined by the verdict of the jury and the entering of judgment thereon as affirmed by our Supreme Court in *Hinds, Executor, Etc. v. McNair, et al., supra.* The parties in the instant appeal are privies of the parties in the prior case, and the other requisite elements for the application of the doctrine of res judicata are present. Therefore, the parties herein are bound by the determination that a trust of the property herein question existed at the time of the opinion in *Hinds, Executor, Etc. v. McNair, et al., supra.*"

153 Ind.App. at 481, 287 N.E.2d at 771. As correctly held by the trial court, the 1972 decision, which bound the parties in the present litigation to the determination of the creation and existence of an oral trust as of 1955, is therefore the law of the case in the present appeal.

Hinds and Hamacher contend public policy demands that law of the case not be applied. On the contrary, we find all of the considerations for application of the doctrine are present. Law of the case is akin to res judicata in its contemplation of a timely termination of disputes and in its avoidance of otherwise endless litigation. We cannot envision an instance which more clearly compels application of the doctrine since the present question involving the creation and existence of the parol trust has now been before an appellate tribunal on several occasions. The question of the creation and existence of the trust having been decided in 1955 by the Supreme Court of Indiana and held res judicata by the Appellate Court in 1972, we cannot permit the subject to be reopened for further litigation in this case.[20]

**20.** Only Hinds argues on appeal that Ind.Code 30 4-2-1, effective September 2, 1971 retroactively requires a writing in actions to enforce a trust by virtue of Ind.Code 30–4–1–4 which provides in pertinent part:

"Except as provided elsewhere in this article, the rules of law contained in this article shall apply to all trusts created prior to the effective date of this act unless to do so would: (1) adversely affect a right given to any beneficiary;
. . . ."

He alleges the quoted portion saves only McNair, Jr.'s interest but does not apply to the other parties since they are not beneficiaries of the trust.

However, Hinds has waived this argument by failing to present this view to the trial court in his motion to correct errors. As we stated in *Diaz v. Duncan*, (1980) Ind.App., 406 N.E.2d 991:

"It is well settled that a complaining party has a duty to state an alleged error with specificity in his motion to correct errors to permit the trial court to review the exact legal issue involved. Such was the requirement of Ind.Rules of Procedure, Trial Rule 59(B), and unchanged in TR. 59(D)(2), effective January 1, 1980, and failure to comply waives the claimed error."

*Id.* at 997. *Accord Johnson v. State*, (1975) 167 Ind.App. 292, 338 N.E.2d 680. In his motion, Hinds questions the *existence* of a trust due to a lack of a written instrument and supports this error in his statement of facts and grounds by maintaining "the beneficiaries of this trust had no vested interest in the trust *at the time of its creation* and therefore Indiana Code Section 3[0]–4–2–1 [requiring a writing to enforce a trust] is applicable to the present situation." (emphasis added). The argument so presented is answered by reference to a previous portion of this decision wherein we determined that Sonia and McNair, Jr. acquired a vested interest at the time of the transfer of the stock in trust which occurred in 1931, the date of the trust's creation.

This is an entirely different issue from that argued in Hinds' brief where he assumes McNair, Jr. had a vested interest, but the other parties had not acquired a protected interest under IC 30–4–1–4, *supra* since they were not "beneficiaries." Even if this argument had been fairly raised in the motion to correct errors, we further note that the quoted portion of the statute is the codification of the long stand-

## VII. *OTHER ALLEGED PROCEDURAL ERRORS*

 Hamacher also alleges the trial court made several erroneous procedural rulings. First, she attacks the court's denial.of her two motions to continue.the trial date. These motions were based on her alleged inability to examine the transcript of the 1955 *Hinds v. McNair* trial. The record does indicate that the parties had some difficulty in locating such transcript. But Hamacher fails to make cogent argument on how she was prejudiced in this regard. Such transcript was in fact located, submitted as evidence and is included in the record on appeal. Thus Hamacher has been afforded ample opportunity to examine it and disclose to this Court how the initial inability to do so harmed or prejudiced the estate. In view of our settled standard of review by which we will not disturb a trial court's granting or refusing of a continuance absent a showing of clear and prejudicial abuse of discretion, Ind. Rules of Procedure, Trial Rule 53.4; *Indiana Alcoholic Beverage Commission v. State ex rel. Harmon* (1978), Ind., 379 N.E.2d 140; *Sam Loudermilk v. Feld Truck Leasing Co. of Indiana*, (1976) Ind.App., 358 N.E.2d 160, we cannot find error here.

 Hamacher also claimed in her motion to correct errors and now argues that the trial court abused its discretion when it failed to formally note in the record that McNair, Sr.'s estate was closed on August 14, 1970 and not reopened until April 16, 1975. These facts, she suggests, would establish that the estate was unrepresented in this action for a substantial period of time and during which pre–trial conferences were held. However, she does not direct our attention to the record of any pre–trial

conferences nor of any orders resulting therefrom. In fact, the only prejudice alluded to in her argument is, again, that she was not afforded sufficient time to examine the 1955 transcript. The court's ruling on this issue was neither erroneous nor prejudicial.

Finally, Hamacher alleges the court erred in denying her permission to file a cross–claim or, in the alternative, in refusing to convert an earlier motion to declare the settlement agreement void into a cross–claim. We find no error in the trial court's rulings. The collective allegations in these pleadings were identical to those contained in Hinds' pleadings which Hamacher was permitted to adopt.

The judgment is affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.

ing rule that a statute may not be retroactively applied if such application impairs vested rights. *Herrick v. Sayler*, (7th Cir. 1957) 245 F.2d 171; *Stewart v. Marson Construction Corp.*, (1963) 244 Ind. 134, 191 N.E.2d 320; *Aurora & L. Turnpike Co. v. Holthouse*, (1855) 7 Ind. 59. *See also*, 89 C.J.S. Trusts § 30 (1955). The study Commission Comments to IC 30–4–1–4, which are statutorily designated as available guides for construction and application of the Trust Code under Ind.Code 30–4–1-7, specifically recognizes this general prohi-

bition against the impairment of such rights. See Study Commission Comments, IC 1971, 30–4–1–4 (Burns Code Ed.). As determined in a prior portion of this opinion, Sonia's heirs, Virginia Parramore and Milan Uzelac, acquired a vested right to her portion of the trust assets upon Sonia's death in 1962, which was prior to the passage of the Indiana Trust Code. Therefore, it is our opinion that IC 30–4–2–1 cannot be retroactively applied to defeat an interest which vested prior to the statute's enactment.